UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

EVERETTE WEAVER

                       Plaintiff                                     1:22-cv-559 (BKS/DJS)

v                                            Civil Action No. 22-cv

NEW YORK STATE UNIFIED COURT SYSTEM

NEW YORK STATE OFFICE OF COURT ADMINISTRATION

KINGS COUNTY SUPREME COURT

NANCY T. SUNSHINE

NEW YORK CITY POLICE DEPARTMENT

                      Defendants

-------------------------------------------------------------------------X

**COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

1. This is a complaint for Genocide pursuant to (Title 18 U.S.C. § 1091 (a) (4)), for subjecting plaintiff and his family to conditions of life that that were intended to cause the physical destruction of plaintiff and his family.

2. This is also a complaint for injunctive and declaratory relief pursuant to Title VII of the Civil Rights Act of 1964 (discrimination against someone on the basis of race, color, National origin, and or religion), and 42 U.S.C. § 1983 (Deprivation of Rights under color of Law).

3. Plaintiff further raises claims under the New York State Human Rights Law, New York Executive Law § 290, et seq., Article 4-A of the New York State Executive Law, and New York Executive Law § 54 (Powers of the Inspector General).

1

4. As set forth in detail below, defendants discriminated against plaintiff on the basis of race, color, and national origin, and further deprived plaintiff of his due process rights.

5. Defendants then engaged in a repressive strategy of retaliation to silence plaintiff, with intent to put plaintiff's cases into the sewer system in violation of State and Federal Law.

## JURISDICTION AND VENUE

6. Jurisdiction is conferred upon this Court by 28 USC § 1331 and 28 USC § 1343; supplemental jurisdiction over plaintiff's State Law claim is conferred upon this Court by 28 USC § 1367 (a).

7. Venue is properly laid out in the Northern District of New York under 28 USC § 1396 (b) because the New York State Unified Court System, and the New York State Office of Court Administration are headquartered in Albany County.

8. Therefore, the policies and procedures of the Kings County Supreme Court were set in the Northern District of New York, and both the New York State Unified Court System, and the New York State Office of Court Administration are responsible for the wrongdoing of Judges, and Court employees under the doctrine of respondeat superior.

9. Plaintiff has exhausted all administrative remedies which were nothing but shams.

10. Plaintiff brought this action in the Northern District of New York because you don't ask a criminal to partake in the investigation of the crime.

11. Plaintiff filed a request for public records under the freedom of information law for the witness Sophia L. Maloney who made false statements to the Police which caused plaintiff to be wrongfully arrested on September 21, 2008.

12. On January 7, 2022 plaintiff received a response from the Department of State which includes references from three different witnesses who state that Sophia L. Maloney was living in Santiago, Dominican Republic from January 2009 to December 2015.

13. The witness references, fails to comport to the affidavit of Sophia Maloney which was notarized by Jenny Weng in New York County on February 23, 2011 and submitted to the Manhattan Federal Court by Alexandra Corsi, assistant Corporation Counsel of the City of New York Law Department that was used to induce the Court to dismiss plaintiff's complaint against the Police Department for wrongful arrest.

Exhibit 1. Response to request for public records of Sophia L. Maloney, FOIL DOS-21-12-062 dated December 13, 2021 & January 7, 2022.


14. If Sophia Maloney reside and worked in the City of Santiago in the Dominican Republic from January 25, 2009 to December 30, 2015, then how did Maloney found Jenny Weng in New York County to notarize an affidavit on February 23, 2011?

15. If Sophia Maloney reside and worked in the City of Santiago in the Dominican Republic from January 25, 2009 to December 30, 2015, then how did Alexandra Corsi of the City of New York Law Department communicated and received an affidavit from Maloney in February of 2011, unless Corsi and her employer acted as facilitators to the conspiracy?

16. On or about September 25, 2021 plaintiff made a request to the Office of Court Administration seeking an investigation into the Kings County criminal conspiracy.

17. The Office of Court Administration sent a response dated October 6, 2021 which states, "Dear Mr. Weaver: This office is in receipt of your notice of motion dated September 25, 2021 with all its various attachments. Please be advised this office has no jurisdiction to

interfere with a Court case or decisions handed down by the Courts. I am returning your documents."

**Exhibit 2**. Response from the Office of Court Administration dated October 6, 2021.

## PARTIES

18. Plaintiff EVERETTE WEAVER (WEAVER) is a male of African descent with an address of 827 Route 82, Hopewell Junction, (Dutchess County) New York 12533.

19. Defendant NEW YORK STATE UNIFIED COURT SYSTEM ("UCS") is made up of various levels of trial and Appellate Courts established by the Constitution and Laws of the State of New York, and is headquartered at 4 Empire Plaza, Suite 2001, Albany, (Albany County) New York 12223.

20. Defendant NEW YORK STATE OFFICE OF COURT ADMINISTRATION ("OCA") is headquartered at 4 ESP, Suite 2001, Empire State Plaza, Albany, (Albany County) New York 12223.

21. Defendant KINGS COUNTY SUPREME COURT (KCSC) is a trial Court located at 360 Adams Street, Brooklyn, (Kings County) New York 11201, in the Second Judicial District of the State of New York which acted as a facilitator to a conspiracy to deprive plaintiff of his due process rights.

22. At all times relevant to this complaint, defendant NANCY T. SUNSHINE (SUNSHINE) was and still is the County Clerk, Clerk of the Supreme Court, and Commissioner of Jurors of Kings County, is married to Judge Jeffrey Sunshine, and has an office located at 360 Adams Street, Room 189, Brooklyn, (Kings County) New York 11201. She is being sued in her official capacity.

4

23. At all times relevant to this complaint, defendant NEW YORK CITY POLICE DEPARTMENT (NYPD) was the employer of officer Rahman who wrongfully arrested plaintiff on September 21, 2008 based upon the statement of a witness named Maloney, and is headquartered at 1 Police Plaza, New York, (New York County) New York 10038.

## FACTS

24. This action is about a conspiracy to deprive plaintiff of his due process rights, the alteration of Court records which was aided and abetted by the Kings County Clerk, conspiracy to enter orders without notice to plaintiff, and the entering of orders which prohibits plaintiff from seeking relief without prior permission of the Court with intent to block exposure of the criminal conspiracy.

25. This action is also about a Kings County criminal conspiracy to steal plaintiff's rents for all three apartments located at 489 Classon Avenue in Brooklyn New York from September 1, 2008 to present.

26. Plaintiff was beaten up and got his two front teeth knocked out at the subject property on September 21, 2008 by the assailants who occupants the property, who then called the Police and made false statements upon the instructions of their attorney which caused plaintiff to be wrongfully arrested, and spent twenty five hours in the Kings County Jail.

27. The Police failed to investigate the conspiracy, the assailants who beat up plaintiff in September of 2008 are still living rent free in the subject property, but rent out one apartment and used the rents to pay their legal fees, in order to continue to live rent free.

28. The Kings County Criminal Court issued orders prohibiting plaintiff from going near the subject property, the property has been in foreclosure since 2009, and the conspiracy is

being facilitated by numerous Judges of the Kings County Supreme Court with intent to deprive plaintiff of his due process rights, and block exposure of the criminal conspiracy.

29. At all times relevant to this complaint, plaintiff was and still is a litigant in the Kings County Supreme Court.

## ARREST OF PLAINTIFF ON SEPTEMBER 21, 2008 BY THE NYPD

30. On August 28, 2008 plaintiff purchased a three family home, along with co-borrower Leola Paul from BHW Management Inc., for $680, 000.00. **See exhibit K** of the affidavit in support of motion for reargument which can be found in exhibit 2.

31. On Sunday September 21, 2008 plaintiff went to the subject property with two Handy-Men, to install a for sale sign on the three family home which consist of four floors.

32. Shelly Gibbs came out, then called her attorney John James from her cordless home telephone, who instructed her to call her husband Darrell Parker.

33. Darrell Parker quickly showed up from around the corner on Madison Street with Michael Gibbs and a third unidentified male, the three men beat up plaintiff and knocked out two of plaintiff's upper front teeth, while Shelly Gibbs called the Police and made false statements which caused the Police to show up and arrest plaintiff.

34. The Police failed to read plaintiff his Miranda rights, refused to offer plaintiff medical attention for his injuries as a victim, took plaintiff to the 79th Precinct Holding cell for a mugshot and Finger-printing, then charged plaintiff with resisting arrest.

35. Plaintiff was then shackled hand and feet like a murderer to another prisoner with the last name Holmes, placed into a waiting Police Van, and taken to the Kings County Jail

where plaintiff spent the next twenty five hours. **See exhibit L** of the affidavit in support of motion for reargument which can be found in exhibit 2.

36. John James filed a motion to vacate Deeds on April 23, 2009 in the Kings County Supreme Court in the case of Better Homes Depot v Whyte et al; and attached an affidavit in support executed by Elma Gibbs which states in paragraph Nos. 7-11, "On September 21, 2008, my friend, Sophia Maloney was visiting me and my family at the subject property.

A few hours later on that date, an unknown male appeared at the subject property and told us to get off his property and started posting for sale signs.

My friend Sophia Maloney and my Grandson tried to talk to this unknown male about his claims to the property.

This unknown gentleman pulled out a knife and tried to stab Sophia Maloney, and my Grandson wrestled with him.

The Police were immediately called and arrested this unknown male who I later learned to be Everette Weaver. See copy of correspondence from Kings County District attorney, supporting deposition of Sophia Maloney, and e-courts minutes on the pending criminal case against Everette Weaver annexed hereto as exhibit F." **See exhibit R** of the affidavit in support of motion for reargument which can be found in exhibit 2.

37. Plaintiff sued Sophia Maloney in the case of Everette Weaver v the City of New York et al; case No. 09-cv-10262 (PKC) (DCF), and served Maloney with deposition by written questions which ask in deposition question No. 5, "Where were you on Sunday September 21, 2008 at 9. 30 a.m.?" **See exhibit S** of the affidavit in support of motion for reargument which can be found in exhibit 2.

38. Maloney executed an affidavit which was notarized on February 23, 2011 by Jenny Weng qualified in New York County and her answer to deposition question No. 5 states, "Walking back to my house. I was passing 489 Classon Ave, after I parked my car." **See exhibit T** of the affidavit in support of motion for reargument in exhibit 2.

39. Deposition question No. 10 ask, "Did you need medical attention for your injuries?" **See exhibit S** of the affidavit in support of motion for reargumemt which can be found in exhibit 2.

40. Maloney responded to deposition question No. 10 and states, "No, I refused." **See exhibit T** of the affidavit in support of motion for reargument which can be found in exhibit 2.

41. Deposition question No. 13 ask, "Are you aware that Elma Gibbs signed an affidavit on April 23, 2009 notarized by her attorney John James which states that Everette Weaver threatened a visiting family friend (Sophia Maloney) with a knife on Sunday September 21, 2008? Is her statement accurate?" **See exhibit S** of the affidavit in support of motion for reargument which can be found in exhibit 2.

42. Maloney responded to deposition question No. 13 and state, "No.  I'm not aware. I was passing in front their home." **See exhibit T** of the affidavit in support of motion for reargument which can be found in exhibit 2.

43. Therefore, the affidavit of Sophia Maloney fails to comport to the affidavit in support executed by Elma Gibbs and notarized by her attorney John James. **See exhibits R, S & T** of the affidavit in support of motion for reargument which can be found in exhibit 2.

44. Plaintiff sued the arresting officer Azizur Rahman for wrongful arrest, failure to read plaintiff his Miranda rights, and for failing to offer medical attention to a victim.

45. The officer through his attorney Alexandra Corsi made false statements dated January 7, 2011 in regards to plaintiff's arrest on September 21, 2008. **See exhibit U** of the affidavit in support of motion for reargument which can be found in exhibit 2.

46. Plaintiff went to the Kings County District attorney to seek the arrest of Sophia Maloney and her co-conspirators, but on January 7, 2011 Richard Farrell of the Rackets Division of the Kings County District attorney's office send plaintiff a correspondence which states in the last paragraph, "If IAB gathers evidence of criminal conduct, they will contact this office. If the Court or your lawyer discover evidence of criminal conduct, they can contact us. Until such referrals are made, this matter is closed." **See exhibit V** of the affidavit in support of motion for reargument which can be found in exhibit 2.

47. On September 17, 2015 on or about 3. 30 p.m., plaintiff went to the 79th Precinct for the second time to seek the arrest of Sophia Maloney and the assailants who beat up plaintiff, and knocked out two of plaintiff's upper front teeth.

48. Lieutenant Singh who was in charge of the 79th Precinct told plaintiff to get out of the Precinct and don't come back.

49. Plaintiff also spoke to Officer Dejesus with badge No. 5516 who bluntly told plaintiff, "We can't arrest witnesses. Otherwise, witnesses will not come forward in the future."

50. Not only do the events of September 21, 2008 in the affidavit of Elma Gibbs fails to comport to the facts and events in Maloney's affidavit, but Alexandra Corsi submitted a known false affidavit to the Courts of the Southern District which induced the Court to dismiss plaintiff's complaint against the New York City Police Department.

51. Sophia Maloney executed an affidavit in the presence of a notary public qualified in New York County named Jenny Weng on February 23, 2011 which was then submitted to the

Court by Alexandra Corsi on March 8, 2011 in the case of Weaver v the City of New

York et al; case No. 09-cv 10262 (PKC) (DCF). **See exhibit T** of the affidavit in support

of motion for reargument which can be found in exhibit 2.

52. Plaintiff made a request under the freedom of information Act for the file of the witness

Sophia Maloney who is a licensed Beautician in the State of New York.

53. The Department of State sent responses dated December 13, 2021, and January 7, 2022

which includes three separate references to validate Maloney's work experience.

54. The first reference is a Womens letter from Josefina Mota dated October 8, 2017 which

states, "To whom it may concern: Hi my name is Josefina Mota, I am the owner of the

Beauty Salon "Bellezas Por Josefina" located in Santiago, Dominican Republic. This

letter is to inform that Sophia L. Maloney worked in my Beauty Salon from January 25th,

2009 to December 30th, 2015. At my Salon she would schedule client appointments,

operate cash registers to receive payments from patrons, demonstrate and sell hair care

products and cosmetics, shampoo, rinse, condition and dry hair and scalp or hairpieces

with water, liquid soap, or other solutions, bleach, dye, or tint hair, using applicator or

brush, analyze patron's hair and other physical features to determine and recommend

beauty treatment or suggest hair styles, cut, trim and shape hair or hairpieces, based on

customers' instructions, hair type and facial features, using clippers, scissors, trimmers

and razors, and kept work stations clean and sanitize tools such as scissors and combs."

**See the Womens Letter** signed by Josefina Mota dated October 8, 2017 which can be

found in exhibit 1.

55. The second reference is a letter from Betania Baez which states, "I, Betania Baez, reside at --,

in the County of ------- State of --------. I am presently employed as a Customer Service Rep.,

for Optimum County of Bronx, State of NY. I have personally known Sophia L. Maloney the applicant for an operator's license for a period of approximately 6 years. I know of my own knowledge that the said applicant engaged in the above- named practice from March 1, 2009 to Dec. 30th, 2015, in the State/County of Santiago, DR. Such knowledge is based on the following facts: She would do wash and sets, blow dry, deep conditioner, relaxer, hair dye, perms, scissor cuts, scissor trims, braids, manicures, pedicures and facials." **See in the Matter of the application of Sophia L. Maloney executed by Betania Baez** which can be found in exhibit 1.

56. The third reference is a letter from Ana Sanchez which states, "I, Ana Sanchez, reside at ---, in the County of ------- State of -------- . I am presently employed as a Medical assistant for Montefiore, County of Bronx, State of NY. I have personally known Sophia L. Maloney, the applicant for an operator's license for a period of approximately 6 years. I know of my own knowledge that the said applicant engaged in the above- named practice from February 1, 2009 to Dec. 30th, 2015, in the State/County of Santiago, DR. Such knowledge is based on the following facts: Sophia would do wash and sets, blow dry, deep conditioner, relaxer, hair dye, perms, scissor cuts, scissor trims, braids, manicures, pedicures and facials, great customer service, always very clean and neat, great stylist." **See in the Matter of the application of Sophia Maloney executed by Ana Sanchez** which can be found in exhibit 1.

57. If the references of Josefina Mota, Betania Baez, and Ana Sanchez are valid, then Sophia Maloney reside and worked in the City of Santiago in the Dominican Republic from January 25, 2009 to December 30, 2015.

58. On February 23, 2011 Jenny Weng, a notary public qualified in New York County notarized an affidavit executed by Sophia Maloney that was submitted to the Court on March 8, 2011

by Alexandra Corsi, and used to induce the Court to dismiss plaintiff's complaint against the New York City Police Department for wrongful arrest.

59. Thus, Alexandra Corsi, and the Police Department acted as facilitators to a conspiracy by submitting a known false affidavit to the Court, executed by Sophia Maloney and used to induce the Court to dismiss plaintiff's complaint against the Police Department.

## ALTERATION OF THE RECORD BY JOHN JAMES & THE COUNTY CLERK

60. John James client Elma Gibbs fell behind on her mortgage after spending all of her money to pay Coyotes to smuggle her daughter Shelly Gibbs, along with Shelly's three children Michael Gibbs, Nicole Gibbs, and Rico Gibbs into the United States from Barbados.

61. After falling behind on her mortgage as a result of housing and feeding her daughter and three children, Elma Gibbs sold her home to Whyte on July 25, 2002. **See exhibit E** of the affidavit in support of motion for reargument which can be found in exhibit 2.

62. Elma Gibbs was represented by attorney Raye C. Titus when she sold her home to Whyte. **See exhibit F** of the affidavit in support of motion for reargument which can be found in exhibit 2.

63. Shelly Gibbs engaged in marriage fraud when she married Darrell Parker, in order to obtain a Green card because she was still legally married in her native islands of Barbados.

64. In 2005 Whyte entered into a contract with Better Homes Depot to sell the subject property, and that contract ended in the lawsuit of Better Homes Depot v Whyte.

65. The lawsuit by Better Homes Depot Inc., was filed on August 16, 2005 by Michael Raphan with attorney registration No. 1187665. **See exhibit G** of the affidavit in support of motion for reargument which can be found in exhibit 2.

66. On June 23, 2006 Elma Gibbs attorney John James filed an order to show cause to intervene, alleging that the subject property was stolen from his client, and on July 28, 2006 an order was entered by Judge Diana Johnson joining Elma Gibbs as a necessary party to the Better Homes Depot case. **See exhibit H** of the affidavit in support of motion for reargument which can be found in exhibit 2.

67. On April 30, 2007 Better Homes Depot Inc., entered into a stipulation of discontinuance with Coleen Whyte and her attorney Aubrey Rogers. **See exhibit I** of the affidavit in support of motion for reargument which can be found in exhibit 2.

68. On September 6, 2007 Michael B. Raphan cancelled the lis pendens on the subject property in the case of Better Homes Depot Inc. v Whyte et al. **See exhibit J** of the affidavit in support of motion for reargument which can be found in exhibit 2.

69. On August 28, 2008 plaintiff purchased the subject property, along with co-borrower Leola Paul from BHW Management Inc., for $680, 000.00. **See exhibit K** of the affidavit in support of motion for reargument which can be found in exhibit 2.

70. Plaintiff then retained the law firm of Sacco & Fillas LLP, who got orders from the Kings County Housing Court to evict the squatters from all three apartments of the subject property.

71. Gibbs attorney John James filed an order to show cause in the Kings County Supreme Court, and got an order staying all evictions at the subject property from Judge Kurtz. **See exhibit M** of the affidavit in support of motion for reargument which can be found in exhibit 2.

72. John James got an order from Judge Kurtz after manufacturing his own stamp, created and backdated a lis pendens which he submitted with his order to show cause, alleging that there was a lis pendens on the property when plaintiff purchased the property.

73. Thus, John James induced a decision based upon fraud which has allowed Elma Gibbs, and her extended family to live rent free in the subject property from September 2008 to present.

74. The assailants who knocked out two of plaintiff's upper front teeth were never arrested and or prosecuted, but continue to live rent free in two apartments in the subject property from September 1, 2008 to present, rent out the third apartment, and used the rents collected to pay legal fees to John James, in order to continue to live rent free.

75. The assailants rent out the third apartment to Patricia Coombs for many years, but Coombs purchased a condo from Nissim Botton located at 1079 East 72nd Street, Unit 35, Brooklyn, New York for $379, 000.00 on April 12, 2018, and moved out of the subject property which demonstrates that the assailants not only live free, but committed the tort of Conversion.

76. The Tort of Conversion arises from the exercise of dominion over, and the exclusion of lawful owners' rights of possession of their property.

77. "Under New York Law, Conversion is defined as the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owners' rights." State v. Seventh Regiment Fund, 98 N.Y.2d 249 (2002).

78. "The Court of Appeals has stated that there are two key elements of Conversion: (1) plaintiff possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Pappas v. Tzolis, 20 N.Y.3d 228 (2012).

79. After plaintiff conducted an investigation, it became obvious that the font on the stamp used by John James, fails to comport to the font for the stamps used by the Kings County Clerk.

80. Plaintiff filed a notice of nullity of defective verified document on July 15, 2010 with the Kings County Clerk because the Deputy Clerk told plaintiff that the font for the stamp on the

notice of pendency submitted in the order to show cause by John James, fails to comport to the font for the stamps used by the Kings County Clerk. **See exhibits M & W** of the affidavit in support of motion for reargument which can be found in exhibit 2.

81. Plaintiff also filed a motion to vacate an adverse decision in the case of Better Homes Depot Inc. v Whyte et al; before Judge Vaughan and appeared in the Kings County Supreme Court for a hearing on April 7, 2010.

82. Judge Vaughan was not present in the Courtroom, and plaintiff told Judge Vaughn's Court attorney Joy Campanelli that John James got an order after manufacturing a lis pendens, and used a Fake stamp which induced a decision based upon fraud.

83. John James then told Joy Campanelli that he has an arrangement with Nancy Sunshine, Clerk of the Court whereby from time to time he borrow the stamp.

84. Nancy Sunshine is the Clerk of Kings County, and is married to Judge Jeffrey Sunshine, the Chief Judge for all matrimonial actions in Kings County.

85. Therefore, John James manufactured his own stamp which was used for nefarious reasons.

## CONSPIRACY BY THE KINGS COUNTY SUPREME COURT TO DEPRIVE PLAINTIFF OF HIS DUE PTROCESS RIGHTS

86. John James filed an order to show cause seeking an extension of the stay issued by Judge Kurtz. **See exhibit M** of the affidavit in support of motion for reargument which can be found in exhibit 2.

87. On April 13, 2009 Judge Hinds-Radix signed an order staying all actions by Everette Weaver and his agents to remove Elma Gibbs and all her family members residing on all floors of 489 Classon Avenue, Brooklyn, New York pending the resolution of the Supreme

Court action, and vacating all warrants and judgments obtained by Everette Weaver against Elma Gibbs, Shelly Gibbs-Parker, and the remaining family members residing in the subject property in the Kings County Housing Court. **See exhibit N** of the affidavit in support of motion for reargument which can be found in exhibit 2.

88. On May 7, 2009 Judge Sylvia Hinds-Radix entered an order joining Everette Weaver as a defendant in the case of Better Homes Depot Inc. v. Whyte et al. **See exhibit O** of the affidavit in support of motion for reargument which can be found in exhibit 2.

89. Plaintiff filed a motion to vacate an adverse decision in the case of Better Homes Depot Inc. v Whyte el al; before Judge Vaughan, and plaintiff appeared in the Kings County Supreme Court for a hearing on April 7, 2010.

90. Judge Vaughan was not present in the Courtroom and plaintiff told Judge Vaughan's Court attorney Joy Campanelli that John James got an order after manufacturing a lis pendens, and used a Fake stamp which induced a decision based upon fraud.

91. John James then told Joy Campanelli that he has an arrangement with Nancy Sunshine, Clerk of the Court whereby from time to time he borrow the stamp.

92. Plaintiff demanded to see Judge Vaughan, but Joy Campanelli left plaintiff for last to make sure that no other litigants saw what she intended to do.

93. After all other litigants left the Courtroom, Campanelli called two male Court officers to assist a female Court officer named Dawn.

94. Campanelli then told plaintiff that Judge Vaughan was not available, and if plaintiff do not leave the Courtroom, he will be arrested.

95. When plaintiff demanded a reason for his arrest, and questioned a decision on the motion, Campanelli said that a decision will be mailed to plaintiff's address.

96. Several weeks later after no decision appeared in the mail, plaintiff returned to the Court to get a copy of Judge Vaughan's decision.

97. The Clerk advised plaintiff that the motion was marked off, the decision was oral, and no appeal can be taken from an oral decision.

98. In or about October 2015 John James filed a motion in the case of Better Homes Depot, Inc., v Whyte et al; and failed to notice plaintiff.

99. The motion was adjourned to March 8, 2016, and plaintiff appeared in Court on March 8, 2016 to notify the presiding Justice that John James failed to serve plaintiff with the motion.

100.    When the Calender was called, plaintiff answered application and waited to be heard.

101.    After the Calender call it became obvious that Judge Vaughan was not in the Courtroom, but his Court attorney Joy Campanelli, and part Clerk Peter instructed attorneys to settle their cases.

102.    When plaintiff complained that cases were being settled, but plaintiff's application was not being heard, Peter who was busy talking to John James told a female Court Officer named Dawn to take care of plaintiff.

103.    Dawn invited plaintiff outside the Courtroom to discuss the matter, but once plaintiff got outside the Courtroom, Dawn ran back inside the Courtroom and locked the door, and a decision was made without plaintiff being present.

104.    Plaintiff then went directly to the office of Administrative Judge and filed a complaint about the incident. **See exhibit X** of the affidavit in support of motion for reargument which can be found in exhibit 2.

105.  Plaintiff also spoke to a male litigant of African descent in Kings County who explained that when he questioned the procedures in a Courtroom in the Kings County Supreme Court, the part Clerk instructed the Court Officer to assist him.

106.  The Officer then invited the litigant outside the Courtroom to discuss the matter, but once the parties got outside the Courtroom, the officer ran back inside the Courtroom and locked the door to the Courtroom.

107.  It is at this point that plaintiff realized that the Courtroom incident with a female officer named Dawn was not an isolated incidence, but a pattern of conduct commonly used in the Kings County Supreme Court upon pro se male litigants of African descent who question the corrupt practices of the Kings County Supreme Court.

108.  Plaintiff initiated an Article 78 proceeding against Judge Vaughan in the Second Department, and Monica A. Connell of the New York State attorney General's office represented Judge Vaughan in the matter.

109.  Monica Connell then e-mailed plaintiff one version of her opposition, but filed a different version of her opposition in the Second Department the following day.

110.  Plaintiff filed a complaint against Monica Connell, and Sherry Cohen, First Deputy Chief Counsel for the First Department handled the matter, in docket No. 2010-0909. **See exhibit Y** of the affidavit in support of motion for reargument which can be found in exhibit 2.

111.  The Second Department decision in the Matter of Weaver v Vaughan, 2010 NY Slip Op 02959 {72 AD3d 695} states, "Proceeding pursuant to CPLR article 78 in the nature of mandamus to compel the respondent, a Justice of the Supreme Court, Kings County, to determine the Petitioner's motion in an underlying action entitled Better Homes Depot, Inc. v Whyte, pending in the Supreme Court, Kings County, under index No. 025309/05 to vacate

an order staying evictions at certain premises in Brooklyn. Upon the papers filed in support of the Petition and the papers filed in opposition thereto, it is, ordered that the Petition is denied and the proceeding is dismissed, without costs or disbursements. The extraordinary remedy of Mandamus will lie only to compel the performance of a ministerial act and only when there exists a clear legal right to the relief sought (see Matter of Legal Aid Socy. of Sullivan County v Scheinman, 53 NY2d 12, 16 {1981}). This proceeding for a Writ of Mandamus to Compel Justice Vaughan to determine the Petitioner's motion in an underlying action on the ground that 60 days has elapsed after the motion was submitted for decision (see CPLR 2219) is premature, as the motion is not returnable until April 7, 2010 (see Matter of Goldman v Seidell, 234 AD2d 547 {1996}). **See exhibit Z** of the affidavit in support of motion for reargument which can be found in exhibit 2.

112.    Because plaintiff filed a complaint against Judge Vaughan's attorney Monica Connell, Judge Vaughan, his Court attorney Joy Campanelli, his Part Clerk Peter, and his Court Officer Dawn engaged in a conspiracy with John James to victimize plaintiff by entering orders without notice to plaintiff which have allowed John James clients to live rent free in the subject property from 2008 to present.

113.    Judge Vaughan signed an order on January 9, 2012 prohibiting plaintiff from supporting or opposing his designated claims, prohibiting plaintiff from producing in evidence designated things or items of testimony, precluding plaintiff from offering financial information, and prohibiting plaintiff from offering any testimony or evidence at a hearing or trial on all issues raised which deprived plaintiff of his due process rights." **See exhibit AA** of the affidavit in support of motion for reargument which can be found in exhibit 2.

114.    Judge Vaughan's January 9, 2012 order has allowed Elma Gibbs, the assailants who beat

up plaintiff on September 21, 2008, and their extended family to live rent free in the subject

three family home until Jesus comes for the second time, but plaintiff was never served with

the motion and recently found out about the order.

115.    On September 11, 2009 Judge Jack Battaglia entered an order which states, "Defendant

Elma Gibbs motion for summary is denied for failure to attach complete set of pleadings.

Defendant Gibbs motion to transfer Housing Court action to this Court is granted only to the

extent that the stay of eviction granted by Hon. Sylvia Hinds-Radix will remain in effect

pending any future order of the Court." **See exhibit BB** of the affidavit in support of motion

for reargument which can be found in exhibit 2.

116.    What is strange, is that the assailants who beat up plaintiff on September 21, 2008 and

live rent free in the subject property from September 1, 2008 to present are from the island of

Barbados, and Judge Hinds-Radix is also from Barbados.

117.    Judge Hinds-Radix told co-defendant Whyte in Court that it appears that Elma Gibbs

home was stolen, and that she could refer the matter to the Kings County District attorney for

an investigation.

118.    Plaintiff retained the law firm of Sacco & Fillas LLP, and the law firm assigned an

attorney named Gary to plaintiff's case.

119.    Judge Hinds-Radix even had the audacity to ask Gary in the Courtroom, if he was willing

to file a claim with plaintiff's Title Company.

120.    On March 6, 2020 plaintiff filed a motion to disqualify John James, vacate all prior

orders for misrepresentation, fraud and new evidence, and to dismiss the complaint with a

return date of March 30, 2020, and serve all relevant parties.

121.   The motion to disqualify John James was adjourned by the Court to May 6, 2020.

122.   The motion to disqualify James was then adjourned to June 24, 2020 by the Court.

123.   The motion to disqualify James was adjourned for the third time to August 11, 2020.

124.   The motion to disqualify John James was finally adjourned to November 18, 2020.

125.   John James failed to file an opposition to the motion and a hearing took place on
November 18, 2020 via telephone.

126.   At the hearing, Justice Cohen raised the issue of service upon 212 First Holding Corp.

127.   Plaintiff explained to Justice Cohen that 212 First Holding Corp., was not a property
party to the case.

128.   Plaintiff further explained to Justice Cohen that Judge Vaughan lacked jurisdiction to
entertain John James motion to add 212 First Holding Corp., as a necessary party defendant
because Weaver, Better Homes Depot Inc.,, and co-defendant Whyte were not noticed, and
or served with the order to show cause as required by the rules of the Court.

129.   Plaintiff also explained to Justice Cohen that Better Homes Depot Inc., withdrew on May
14, 2007, ceased to exist on June 29, 2016, and that Judge Vaughan's order joining 212 First
Holding Corp., as a necessary party defendant was entered on October 6, 2016 which is three
months after Better Homes Depot Inc., dissolved, and ceased to exist.

130.   In addition, plaintiff explained to Justice Cohen that Judge Vaughan's order joining 212
First Holding Corp to the Better Homes Depot case was void ab initio because the plaintiff in
that case, Better Homes Depot Inc., ceased to exist.

131.   Plaintiff also cited the controlling April 29, 2016 order of Judge Baily-Schiffman in the
case of 212 First Holding Corp v Everette Weaver, case No. 7675/2015, the April 27, 2017
decision & order of the Surrogate's Court in the Estate of Leola Paul, case No. 4647/B-2011,

and the October 1, 2019 decision & order by Judge Montelione in the case of Everette

Weaver v 212 First Holding Corp., and Michael Norman Paul, case No. 1798/ 2019 which

void the Deed from Michael Norman Paul to 212 First Holding Corp., for violating specific

restrictions of the Surrogate's Court. See exhibits **KKK, LLL & MMM** of the affidavit in

support of motion for reargument which can be found in exhibit 2.

132.    Plaintiff specifically explained to Justice Cohen that the October 1, 2019 decision &

order of Judge Montelione cancelled and expunged the January 13, 2015 Deed from Michael

Norman Paul as Heir at law of Leola Paul to 212 First Holding Corp.

133.    Justice Cohen then asked plaintiff if Judge Montelione's decision & order was entered

based upon default, and plaintiff responded to Justice Cohen and said, Yes.

134.    Justice Cohen then said that Judge Montelione had no authority to enter such order.

135.    When plaintiff tried to explain the inconsistencies, Justice Cohen cut off plaintiff's

microphone, said whatever he wanted to say, then told plaintiff to respond.

136.    Plaintiff could not respond because Justice Cohen intentionally turned off plaintiff's

microphone with intent to block the truth, and protect John James from a default which

demonstrates that Judge Cohen engaged in a conspiracy to join an existing conspiracy.

137.    Justice Cohen then said that plaintiff's motion is denied for failing to serve 212 First

Holding Corp., and that Judge Vaughan issued orders blocking such relief.

138.    The facts and evidence shows that Justice Cohen engaged in a conspiracy to join Judge

Vaughan's conspiracy to victimize plaintiff because the Clerk entered an order on January

13, 2021 denying plaintiff's unopposed motion to disqualify John James. **See exhibit UUU**

of the affidavit in support of motion for reargument which can be found in exhibit 2.

139.    The record shows that Judge Vaughan entered an order joining 212 First Holding Corp., as a necessary party defendant to the Better Homes case, even though the attorney who initiated the Better Homes action Michael Raphan was sentenced to prison, and that the plaintiff in the Better Homes Depot case dissolved, and ceased to exist.

140.    Plaintiff brought an Article 78 proceeding against Judge Cohen for acting without authority, proceeding without authority, and for engaging in a conspiracy to join an existing conspiracy to victimize plaintiff for filing a complaint against Judge Vaughan's attorney Monica Connell.

141.    On September 15, 2021 the Second Department entered a decision & judgment denying the Petition, and further denied the relief sought which was to refer the matter to the Kings County District attorney for a criminal investigation. **See exhibit VVV** of the affidavit in support of motion for reargument which can be found in exhibit 2.

142.    It has now become apparent that the desired outcome of the Second Department is to put plaintiff's cases into the sewer system by allowing the subject property to be auctioned and cover up the criminal conspiracy which is obstruction of Justice.

143.    The simple reason is, Judge Sylvia Hinds-Radix who entered three separate orders against plaintiff in the Better Homes case, and Judge Lara Genovesi who entered two separate orders withdrawing Scott B. Group's order to show cause for late service upon plaintiff in the CitiMortgage foreclosure case were sitting Judges on the bench of the Second Department when the decision in the matter of Weaver v Cohen was heard and decided.

144.    On October 23, 2015 John James filed an order to show cause to join 212 First Holding Corp., as a necessary party to the Better Homes case without notice to plaintiff. **See exhibit OOO** of the affidavit in support of motion for reargument which can be found in exhibit 2.

145.   On June 29, 2016 Better Homes Depot Inc., dissolved according to the New York State

Department of State, Division of Corporation records. **See exhibit PPP** of the affidavit in

support of motion for reargument which can be found in exhibit 2.

146.   On October 6, 2016 which is three months after Better Homes Depot Inc., dissolved and

ceased to exist, Judge Vaughan entered an order joining 212 First Holding Corp., as a

necessary party defendant to the case of Better Homes Depot Inc., v Colleen Whyte, Elma

Gibbs, and Evertte Weaver. **See exhibit QQQ** of the affidavit in support of motion for

reargument which can be found in exhibit 2.

147.   The facts and evidence above demonstrates that there is a conspiracy between employees

and Judges of the Kings County Supreme Court to victimize plaintiff for filing a complaint

against Judge Vaughan's attorney Monica Connell. **See exhibit Y** of the affidavit in support

of motion for reargument which can be found in exhibit 2.


## CONSPIRACY BY ATTORNEYS FOR CITIMORTGAGE & THE KINGS COUNTY SUPREME COURT TO FIX THE CASE OF CITIMORTGAGE V WEAVER

148.   Because of John James conspiracy to put plaintiff's rents into his pocket, Sara Z. Boriskin

and her employer Berkman, Henoch, Peterson & Peddy, P.C., initiated a foreclosure action

against plaintiff and co-borrower Leola Paul who is now deceased. **See exhibit CC** of the

affidavit in support of motion for reargument which can be found in exhibit 2.

149.   Plaintiff was never served by CitiMortgage with a summons and complaint, and plaintiff

has never been a resident of Kings County.

150.   However, Alexander Klestov filed a false affidavit of service with the Court alleging that

he effected service upon plaintiff on September 28, 2009 at 489 Classon Avenue in Brooklyn

New York which was notarized by Patrick J. Hackett. **See exhibit DD** of the affidavit in support of motion for reargument which can be found in exhibit 2.

151.    The process server alleged that plaintiff was served on September 28, 2009 at 3.15 p.m. by affixing a copy of the summons and complaint to the front door of 489 Classon Avenue in Brooklyn, New York.

152.    The affidavit of service is defective because it was notarized by Patrick J. Hackett, an attorney and Chief Executive Officer of PDY Process Inc., which is not only self-serving, but a conflict of interest because Hackett is the owner of PDY Process, Inc.

153.    PDY Process Inc., was the process serving entity retained to effectuate service, but according to the New York State Department of State, Division of Corporation records, Patrick J. Hackett is the Chief Executive Officer of PDY Process, Inc.

154.    The affidavit of service is further defective because it fails to contain the name of the process serving entity retained to serve process, the address of the process serving entity and a telephone number for the process serving entity as required by New York City administrative Code, title 6, Chapter 2, § 2-234 & 2-235.

155.    In addition, the Kings County District attorney secured an order from the Kings County Criminal Court upon the finality of plaintiff's criminal case in 2009 which prohibited plaintiff from going near Sophia Maloney and the subject property for twelve months.

156.    The manager of the foreclosure Department of the law firm of Berkman, Henoch, Peterson & Peddy, P.C., was Sara Z. Boriskin according to her resume taken from her Linkedin page, and the Fannie Mae list of retained law firms in New York. **See exhibit EE** of the affidavit in support of motion for reargument which can be found in exhibit 2.

157.    On May 13, 2010 Sara Z. Boriskin executed an assignment of mortgage for a property located at 119-27 199 Street in Saint Albans New York purporting to be assistant Secretary of MERS. **See exhibit FF** of the affidavit in support of motion for reargument which can be found in exhibit 2.

158.    On August 11, 2010 Sara Z. Boriskin executed an assignment of mortgage for a property located at 943 Rockaway Avenue in Brooklyn New York purporting to be assistant Secretary of MERS. **See exhibit GG** of the affidavit in support of motion for reargument which can be found in exhibit 2.

159.    To support her authority to execute assignments, Boriskin submitted to numerous New York Courts an agreement for signing authority executed by William C. Hultman purporting to be Secretary/Treasurer of Mortgage Electronic Registration Systems, Inc., dated November 2, 2009 which granted seven different attorneys of her law firm the authority to execute assignment of mortgages. **See exhibit HH** of the affidavit in support of motion for reargument which can be found in exhibit 2.

160.    William C. Hultman was deposed by Mark Malone in the Superior Court of New Jersey in the case of Bank of New York as Trustee v Victor and Enobasi Upke with docket No. F. 10209-08. **See exhibit II** of the affidavit in support of motion for reargument which can be found in exhibit 2.

161.    Page 11, line 13, the conference with Judge Todd ends and William Hultman is sworn in.

162.    Page 12, line 7, Mr. Malone, "Okay. Briefly, would you describe for us your legal education?"

163.    Page 2, line 9, the witness, "I went to the State University of New York Law School at Buffalo from 1977 - - or graduated in 1977."

164. Page 12, line 2, Mr. Malone, "Are you a member of any Bar currently?"

165. Page 12, line 13, the witness, "I'm a member of the New York Bar."

166. Page 13, line 8, Mr. Malone, "When did you start working at MERS?"

167. Page 13, line 10, the witness, "February of 1998."

168. Page 13, line 11, Mr. Malone, "And when I say MERS, I'm going to use that as an abbreviation for Mortgage Electronic Registration Systems, Inc., is that understood?"

169. Page 13, line 14, the witness, "Yes."

170. Page 13, line 15, Mr. Malone, "And is that an appropriate shorthand for describing your employer?"

171. Page 13, line 17, the witness, "My employer is not MERS. If you're using Mortgage Electronic Registration System, Inc."

172. Page 13, line 19, Mr. Malone, "Who is your employer?"

173. Page 13, line 20, the witness, "Merscorp, Inc."

174. Sara Z. Boriskin with Court ID No. 4213567 is now the principal of RAS Boriskin LLC, located at 900 Merchants Concourse in Westbury, New York. **See exhibit JJ** of the affidavit in support of motion for reargument which can be found in exhibit 2.

175. Berkman, Henoch, Peterson & Peddy, P.C., offered for recording an assignment of mortgage for the subject property from MERS as nominee for the loan originator to CitiMortgage, Inc., executed by Kim Krakoviak purporting to be Vice President of MERS. **See exhibit KK** of the affidavit in support of motion for reargument in exhibit 2.

176. The assignment of mortgage is defective because it was prepared on July 21, 2009 and backdated to show the date of June 16, 2009, executed by Kim Krakoviak between July 22,

2009 and August 2, 2009, notarized by Brandon Lewis, and offered for recording with the Kings County Clerk on August 3, 2011, in violation of New York Penal Law 175. 35.

177.    The assignment of mortgage is further defective because the legal identity of the affiant is Kimberly Ann Krakoviak, Vice President of CitiMortgage who resides at 659 Twigwood Drive, Ballwin Missouri with a home telephone number of 636-256-7189.

178.    The home is owned by Kimberly Ann Krakoviak and her husband Peter D. Krakoviak, and public record shows that Krakoviak took a purchase money mortgage to purchase her home from Citibank which shows that her name legal name is Kimberly Ann Krakoviak.

179.    Therefore, CitiMortgage is complicit in the conspiracy because its parent company Citibank entered into a mortgage contract with Kimberly Ann Krakoviak to purchase her home, but its subsidiary CitiMortgage Inc., allows the affiant to execute assignment of mortgages purporting to be an officer of MERS by using the alias, Kim Krakoviak.

180.    Berkman, Henoch, Peterson & Peddy, P.C., also submitted to the Court a Corporate Resolution executed by William C. Hultman purporting to be Secretary of MERS which granted Kim Krakoviak the authority to execute documents on behalf of MERS. **See exhibit LL** of the affidavit in support of motion for reargument which can be found in exhibit 2.

181.    On October 7, 2009 Kim Krakoviak executed an assignment of mortgage for a property owned by Dean and Nancy Horner in Hillsborough County Florida purporting to be Vice President of CitiMortgage, Inc. **See exhibit MM** of the affidavit in support of motion for reargument which can be found in exhibit 2.

182.    According to Pro Title USA which is a Nationwide Title Company, Kim Krakoviak has executed numerous assignment of mortgages purporting to be Vice President of MERS, assistant Secretary of MERS, assistant Vice President of MERS, Vice President of

CitiMortgage, Inc., and assistant Vice President of CitiMortgage, Inc. **See exhibit NN** of the affidavit in support of motion for reargument which can be found in exhibit 2.

183.    On February 20, 2014 the law firm of Berkman, Henoch, Peterson & Peddy, P.C., filed a motion for an order of reference and served plaintiff with the motion via mail, and that's how plaintiff found out about the CitiMortgage foreclosure action.

184.    On March 18, 2014 plaintiff filed a request for an extension of time to retain an attorney which was granted by Judge Solomon. **See exhibit OO** of the affidavit in support of motion for reargument which can be found in exhibit 2.

185.    On July 14, 2014 plaintiff filed an answer to CitiMortgage foreclosure complaint. **See exhibit PP** of affidavit in support of motion for reargument which can be found in exhibit 2.

186.    On November 19, 2014 Eric M. Zisk of the law firm of Sweeney, Gallo, Reich & Bolz LLP, filed a notice of rejection of plaintiff's answer, even though the attorney of record was the law firm of Berkman, Henoch, Peterson & Peddy, P.C. **See exhibit QQ** of the affidavit in support of motion for reargument which can be found in exhibit 2.

187.    Forty one days later, a consent to change attorneys from Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., to the law firm of Sweeney, Gallo, Reich & Bolz LLP, was filed with the Clerk. **See exhibit RR** of the affidavit in support of motion for reargument which can be found in exhibit 2.

188.    The notice of rejection is defective because Sweeney, Gallo, Reich & Bolz LLP, filed a notice of rejection of plaintiff's answer, but the attorney of record was the law firm of Berkman, Henoch, Peterson & Peddy, P.C., as required by CPLR § 321 (a).

189.   CPLR § 2101 (f) only allowed CitiMortgage fifteen days to reject the answer, but the

notice of rejection was filed four months after plaintiff served and filed his answer, and

Judge Solomon granted permission for plaintiff to file an answer to CitiMortgage complaint.

190.   Therefore, CitiMortgage notice of rejection was untimely, defective, and a violation of

Judge Solomon's order.

191.   Plaintiff's co-borrower Leola Paul died on October 4, 2011 according to the City of New

York Department of Health and Mental Hygiene. **See exhibit SS** of the affidavit in support of

motion for reargument which can be found in exhibit 2.

192.   Leola Paul's brother Michael Norman Paul was appointed Administrator of the Estate by

the Surrogate's Court on October 31, 2014. **See exhibit TT** of the affidavit in support of

motion for reargument which can be found in exhibit 2.

193.   Michael Norman Paul then transferred title of the subject property to 212 First Holding

Corp on January 13, 2015. **See exhibit UU** of the affidavit in support of motion for

reargument which can be found in exhibit 2.

194.   The address on the new Deed from Michael Norman Paul to 212 First Holding Corp., is

106-28 Queens Boulevard, Forest Hills, New York 11375.

195.   The website of the United States Postal Service shows that the address of 106-28 Queens

Boulevard, Forest Hills New York 11375 is not the Corporate offices for 212 First Holding

Corp., but the address for a free standing building for the Forest Hills New York Post Office.

**See exhibit VV** of the affidavit in support of motion for reargument in exhibit 2.

196.   On January 15, 2015 which is two days after Michael Norman Paul transferred title to

212 First Holding, Scott B. Group of the law firm of Akerman LLP, filed a notice of

appearance as co-counsel for CitiMortgage. **See exhibit WW** of the affidavit in support of motion for reargument which can be found in exhibit 2.

197.   On June 1, 2015 Scott B. Group of Akerman LLP, filed an order to show cause for late service upon defendant Everette Weaver. **See exhibit XX** of the affidavit in support of motion for reargument which can be found in exhibit 2.

198.   Sixteen days later on June 17, 2015, plaintiff was sued by 212 First Holding Corp in the Kings County Supreme Court seeking an order to sell the subject property. **See exhibit YY** of the affidavit in support of motion for reargument which can be found in exhibit 2.

199.   Five weeks later on July 23, 2015, Nina Khaimova of Sweeney, Gallo, Reich & Bolz LLP, filed a motion to substitute Michael Norman Paul individually and as Administrator of the Estate of Leola Paul, and to further join 212 First Holding Corp., as a necessary party defendant in the case of CitiMortgage v Weaver. **See exhibit ZZ** of the affidavit in support of motion for reargument which can be found in exhibit 2.

200.   After plaintiff filed an opposition to Group's order to show cause for late service, Group withdrew his order to show cause on October 1, 2015. **See exhibit AAA** of the affidavit in support of motion for reargument which can be found in exhibit 2.

201.   John James then recruited Roger Siegel to represent Elma Gibbs in the CitiMortgage foreclosure action, and further engaged in a conspiracy with the attorneys for CitiMortgage.

202.   The transcript of hearing before Judge Genovesi on October 1, 2015 states:

203.   "CitiMortgage versus Weaver. Index number 28430 of 2009, CitiMortgage versus Weaver. Appearances, please."

204.   Page 3, line 4, Mr. Group, "Good morning, Scott Group for the plaintiff."

205.    Page 3, line 6, Mr. Spirgel, "Good morning, your Honor, co-counsel for plaintiff,

CitiMortgage, Samuel Spirgel S P I R G E L appearing on behalf of Sweeney, Gallo, Reich

& Bolz."

206.    Page 3, line 10, Ms. Khaimova, "Co-counsel for Sweeney, Gallo, Reich & Bolz, Nina

Khaimova K H A I M O V A."

207.    Page 3, line 12, Mr. Siegel, "Roger Siegel S I E G E L on behalf of John James, an

attorney who is going to represent a tenant named Gibbs, who he has just retained on."

208.    Page 3, line 16, the Court, "Is the tenant Gibbs the Jane Doe in the caption?"

209.    Page 3, line 18, Mr. Siegel, "Yes, your Honor."

210.    Page 3, line 25, Mr. Group, "Your Honor, there was another attorney here for a party that

is looking to be added in our motion to lift the stay. An attorney for 212 First Holding. I did

e-mail him and let him know that Mr. Weaver was here. I wanted to let the Court know he is

in the Courthouse."

211.    Page 4, line 6, the Court, "He is not a party here. I don't have a motion to intervene."

212.    Page 4, line 16, Ms. Khaimova, "The motion to lift the stay - - back in June we appeared

on an order to show cause at which point we advised the Court that the defendant Leola Paul

has been deceased."

213.    Page 4, line 20, the Court, "As of when?"

214.    Page 4, line 21, Ms. Khaimova, "We found out she has been deceased since some time in

2011, according to the death certificate. I still don't know the date."

215.    Page 4, line 24, the Court, "We are still playing that game?"

216.    Page 5, line 16, Ms. Khaimova, "I believe the Administrator appointed Michael Norman

Paul, who is also served with the summons and complaint."

217.    Page 5, line 19, the Court, "Counsel, I am going to interrupt your argument because I have an attorney requesting to take a seat at counsel's table."

218.    Page 5, line 22, Mr. Capobianco, "Yes, your Honor. With the Court's permission, my name is Joe Capobianco from Reisman, Peirez, Reisman & Capobianco, and I am here with respect on behalf of 212 Holdings, which is seeking to be added as a defendant in this lawsuit."

219.    Page 6, line 2, the Court, "Do I have a motion?"

220.    Page 6, line 3, Mr. Capobianco, "You have a motion."

221.    Page 6, line 4, Ms. Khaimova, "It is part of our motion. We are requesting additional relief having 212 added as a necessary party, given that it appears that this is a Deed transferring Leola Paul's interest by Michael Paul to 212 Holdings."

222.    Page 6, line 9, the Court, "He represented there was another attorney who wishes to appear, he is not present at the time. I said there is no motion to intervene and you said, "Correct, Judge", but it wasn't correct. Your application includes that?"

223.    Page 6, line 14, Ms. Khaimova, "It is within the application."

224.    Page 6, line 15, Mr. Group, "Your Honor, I though you meant did they have a motion pending? I apologize."

225.    Page 6, line 17, the Court, "It doesn't matter to me. If someone made a motion, they do have standing to be present for this oral argument. Counsel, you may continue."

226.    Page 6, line 21, Ms. Khaimova, "Okay, so in conjunction with all of the relief sought, along with the lift stayed and the request to substitute the Administer of Leola Paul, we are also asking to join 212 Holdings based on the new Deed with the interest transferring to them and adding them as a necessary party to this action and amending the caption therewith."

227.    Page 7, line 3, the Court, "When was the property transferred?"

228.    Page 7, line 4, Mr. Group, "The new Deed, your Honor is January 15, 2015."

229.    Page 7, line 6, the Court, "You are welcome to sit here. One of you has to be the lead
argument. Otherwise it is a bit of ping pong and it is not fair."

230.    Page 7, line 9, Ms. Khaimova, "As part of the motion included a copy of the Deed which
was January 13th 2015."

231.    Page 7, line 11, the Court, "Thank you. Do you have anything further?"

232.    Page 7, line 13, Ms. Khaimova, "Not at this time."

233.    Page 7, line 14, the Court, "Mr. Siegel, do you have anything else?"

234.    Page 7, line 16, Mr. Siegel, "No."

235.    Page 7, line 17, the Court, "Counsel, do you have anything that you would like to add on
this motion?"

236.    Page 7, line 19, Mr. Capobianco, "No, your Honor. If we are added as a party, we also
would like to appear and take part in the lawsuit."

237.    Page 8, line 1, Mr. Weaver, "Yes, your Honor. First of all, I object to Mr. Siegel here
being at the Bench. He is not a party to this interest. That is the last attorney down there."

238.    Page 8, line 5, Ms. Khaimova, "He is representing the Jane Doe."

239.    Page 8, line 7, Mr. Weaver, "Jane Doe?"

240.    Page 8, line 8, the Court, "Who is named in the caption."

241.    Page 8, line 9, Mr. Weaver, "He is representing Jane Doe?"

242.    Page 8, line 10, the Court, "He represented that he represented the party named as Jane
Doe in the caption."

243.    Page 8, line 12, Mr. Weaver, "Did he file a notice of appearance? I haven't received it."

244.    Page 8, line 14, the Court, "It is not for you to question me. I am asking you, do you have any opposition to this motion that is currently pending, which is to substitute the Estate and lift the stay so that the foreclosure action can proceed?"

245.    Page 8, line 19, Mr. Weaver, "Yes, your Honor, I do object." **See exhibit BBB** of the affidavit in support of motion for reargument which can be found in exhibit 2.

246.    The record shows that Roger Siegel acted without authority because John James failed to serve plaintiff with a notice of appearance, and Court records shows that John James did not file a notice of appearance with the Clerk until January 7, 2016 which is three months after Siegel appeared in Court of his behalf. **See exhibit CCC** of the affidavit in support of motion for reargument which can be found in exhibit 2.

247.    The transcript of hearing before Judge Genovesi shows that John James engaged in a conspiracy with the attorneys for CitiMortgage, whereby fraud was committed upon the Surrogate's Court based upon the affidavits of Michael Paul, and Sylvester Stanislaus.

248.    Michael Norman Paul filed an affidavit of decedent's father with the Surrogate's Court that was notarized on December 20, 2011 by Kamal P. Soni qualified in Kings County which states, "I am (not) a party to this action, am over eighteen years of age and reside in Brooklyn New York, Kings County. Leola Paul my dead sister and I was brought by our mother Ruby Thomas now dead. We were never privy to who our father was. Our mother gave us no information to wit. I declare and swear to this on the 20th day of December 2011." **See exhibit DDD** of the affidavit in support of motion for reargument which can be found in exhibit 2.

249.    The affidavit of Michael Norman Paul fails to comport to the affidavit of Heirship executed by Sylvester Stanislaus that was notarized on September 30, 2014 and states, "I

Sylvester Stanislaus, being duly sworn depose and say that am not a party to this action, am

over eighteen years of age and my residence is 163 Rhode Is, Av, East Orange, New Jersey

07018, and my relationship to the decedent and the basis of my knowledge of the decedent's

family tree is: I grew up with the family and I also live with the family for about ten years."

**See exhibit EEE** of the affidavit in support of motion for reargument in exhibit 2.'

250. The affidavit of Heirship further states on page 2, paragraph No. 7, "State the full names

of the decedent's parents. (If deceased, state their dates of death.)

Ruby Thomas 2/91

Hilbert Brice 5/10."

251. The facts and evidence above demonstrate that the affidavit of Michael Norman Paul fails to

comport to the affidavit of Heirship executed by Sylvester Stanislaus because Paul's affidavit

states that he and his sister Leola Paul do not know who their father is.

252. On November 12, 2015 Scott B. Group filed a second order to show cause for late service

of a summons and complaint upon plaintiff. **See exhibit FFF** of the affidavit in support of

motion for reargument which can be found in exhibit 2.

253. After plaintiff filed an opposition to Group's second order to show cause for late service,

Group withdrew his order to show cause for late service signed by Judge Genovesi on January 7,

2016. **See exhibit GGG** of the affidavit in support of motion for reargument in exhibit 2.

254. Twenty seven days later on February 3, 2016, Group filed a motion for default judgment

after his employer used its connections to get the case transferred from Judge Lara Genovesi to

Judge Peter Sweeney. **See exhibit HHH** of the affidavit in support of motion for reargument

which can be found in exhibit 2.

255. On March 14, 2016 Shelly Gibbs filed an affidavit in opposition to judgment that was notarized by her attorney John James. **See exhibit III** of the affidavit in support of motion for reargument which can be found in exhibit 2.

256. On September 26, 2016 Judge Peter P. Sweeney entered a decision/order which states in the second paragraph, "From the outset, the Court notes that defendant Weaver is in default. Although he interposed an answer to plaintiff's complaint, plaintiff properly rejected his answer as untimely. To date, defendant Weaver has not moved to vacate his default. Since defendant Weaver has not timely appeared in the action, the Court will treat plaintiff's motion against him as a motion for leave to enter a default judgment." **See exhibit JJJ** of the affidavit in support of motion for reargument which can be found in exhibit 2.

257. The third to last paragraph of Judge Sweeney's order states, "In opposition to plaintiff's motion, defendant Weaver failed to demonstrate that he is not in default. He also failed to establish a reasonable excuse for his delay in answering the complaint and presenting a potentially meritorious defense. To the extent Mr. Weaver claims that he was not properly served the summons and complaint, the process server's affidavit constituted prima facie evidence of proper service upon him on September 28, 2009, pursuant to CPLR 308 (4), and defendant Weaver's allegations were insufficient to refute the contents of the affidavit (see Green Point Savings Bank v Clark, 253 AS2d 514 {2d Dep't 1998}; Remington Invest. v Selden, 240 AD2d 647 {2d Dep't 1997}; Sando Realty Corp. v Aris, 209 AD2d 682 {2d Dep't 1994}).  For the reasons above, the plaintiff has established its entitlement to a default judgment against the defendants and for the appointment of a referee to compute the amounts due and owing the plaintiff. Plaintiff has also demonstrated its entitlement to the other relief it is requesting."

258. After Judge Sweeney entered an order granting default judgment against plaintiff, John James filed a notice of appeal on behalf of his clients Elma Gibbs, and Shelly Parker. **See exhibit RRR** of the affidavit in support of motion for reargument which can be found in exhibit 2.

259. Plaintiff filed a motion to dismiss the notice of appeal filed by John James, and on October 2, 2017 the Second Department entered an order which states in the second paragraph, "Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the papers filed in support of the application and no papers having been filed in opposition or in relation thereto, it is ordered that the branch of the motion which is to dismiss the appeal by the appellants Elma Gibbs and Shelly Parker is granted and the appeal by the appellants Elma Gibbs and Shelly Parker is dismissed, without costs or disbursements (see CPLR 5511)." **See exhibits SSS** of the affidavit in support of motion for reargument which can be found in exhibit 2.

260. On June 17, 2015 plaintiff was sued by 212 First Holding Corp in the Kings County Supreme Court seeking an order to sell the subject property, and split the proceeds.

261. On April 29, 2016 Judge Loren Baily-Shiffman entered a decision & order in the case of 212 First Holding Corp v Weaver which states on page 2 of the second paragraph, "Plaintiff's interest in the subject property is derived from Michael Norman Paul, as Heir at law of Leola Paul. Michael Norman Paul executed a Deed in favor of plaintiff, dated January 13, 2015 and recorded June 4, 2015. Accordingly, Michael Norman Paul, the Administrator of Leola Paul's Estate, violated the specific restrictions as contained in the letters of Administration that prohibit any transfer of decedent's real property without further order of the Court and without the filing of a Bond." **See exhibit KKK** of the affidavit in support of motion for reargument which can be found in exhibit 2.

262. Judge Loren Baily-Schiffman then transferred the case to the Surrogate's Court.

263. Judge Diana Johnson of the Surrogate's Court entered a decision & order in the Estate of

Leola Paul, case No. 4647/B-2011 which states, "In this action, 212 First Holding Corp.

(hereinafter the plaintiff) seeks a judgment, inter alia, providing for the sale of the premises

located at 489 Classon Avenue, Brooklyn, New York (hereinafter the subject property).

The plaintiff alleges that on October 4, 2011, Leola Paul died survived by a sibling, Michael Paul

and seized of a 50% interest in the subject property. The plaintiff further alleges that Everette

Weaver (hereinafter the defendant) held an interest in the subject property with the decedent as

tenants in common.

The Court notes that on October 31, 2014, Michael Paul was appointed Administrator of the

decedent's Estate. In the Decree appointing the Administrator, this Court restrained the

Administrator from inter alia, transferring the decedent's real property without further order of

the Court.

According to the plaintiff, on January 13, 2015, Michael Paul transferred the decedent's 50%

interest in the subject property to the plaintiff and said Deed was recorded on June 4, 2015.

The plaintiff commenced the within action seeking a sale of the subject property and the

defendant moved to dismiss the action. On April 29, 2016, the Honorable Loren Baily-Schiffman

issue an order transferring the action to the Surrogate's Court, Kings County.

The matter was scheduled for a Conference. The Conference was adjourned to April 24, 2017

wherein the plaintiff again failed to appear. Inasmuch as the plaintiff has failed to appear to

prosecute this matter, this action is hereby dismissed. See Uniform rules for trial Cts 22 NYCRR

202.27; SCPA 209 (8)). This constitutes the decision order of the Court." **See exhibit LLL** of the affidavit in support of motion for reargument which can be found in exhibit 2.

264. Plaintiff sued 212 First Holding Corp and Michael Norman Paul in the case of Everette Weaver v 212 First Holding Corp., and Michael Norman Paul.

265. On October 1, 2019 Judge Montelione entered an order & judgment in the case of Weaver v 212 First Holding Corp., which states in paragraph Nos. 6 to 9, "A default judgment is hereby entered against 212 First Holding Corp and Michael Norman Paul. This Court has made a judicial determination that the Bargain and sale Deed dated January 13, 2015, and offered for recording on June 4, 2015 with the Kings County Clerk, City Register file No. 2015000189434, is a void instrument. Therefore, the Kings County Clerk is hereby instructed to cancel and expunge from the public records, the Bargain and sale Deed dated January 13, 2015 and offered for recording on June 4, 2015 with City Register file No. 2015000189434, that was recorded against Block 1987, Lot 3. The foregoing constitutes the decision and order of this Court." **See exhibit MMM** of affidavit in support of motion for reargument which can be found in exhibit 2.

266. On November 24, 2019 Robert Link and his employer David A. Gallo & Associates filed a motion to confirm the Referee and for judgment of foreclosure & sale. **See exhibit NNN** of the affidavit in support of motion for reargument which can be found in exhibit 2.

267. Thus, Robert Link and his employer filed a motion to confirm the referee's report with intent to circumvent Judge Baily-Schiffman's April 29, 2016 order in the case of 212 First Holding Corp v Everette Weaver, the Surrogate's Court April 27, 2017 decision & order, and Judge Montelione's October 1, 2019 order & judgment.

268. New York State Department of State, Division of Corporations records shows that Sweeney, Gallo, Reich & Bolz LLP, changed its name to David A. Gallo & Associates, LLP.

269. On July 31, 2020 New York City Department of Finance sent plaintiff a thirty day notice of intention to sell water liens, showing a total lien amount of $7, 573.66. **See exhibit TTT** of the affidavit in support of motion for reargument which can be found in exhibit 2.

270. John James clients live rent free in two apartments in the subject three family home from September 1, 2008 to present, engaged in Conversion by renting out the third apartment, and use the rents collected to pay legal fees to their attorney, in order to continue to live rent free which meet the standard for both Conversion and Racketeering.

271. John James conduct is being facilitated by the Kings County Clerk, and numerous Judges to whom John James is a major campaign contributor which demonstrate that plaintiff's lost rent is being diverted to finance certain Judicial Campaigns for Judgeship in Kings County.

272. There is no insurance on the subject property because plaintiff's insurance company demanded an internal inspection, but John James instructed his clients not to let in the inspector.

273. On September 1, 2021 the Second Department affirmed the trial Court's order which bars plaintiff from filing any further pleadings with prior permission of the Court with intent to block public exposure of the Kings County criminal conspiracy.

274. On September 1, 2021 the Second Department also affirmed the trial Court's order denying plaintiff's motion for criminal referral to the Kings County District attorney. **See exhibits A, B, C & D** of the affidavit in support of motion for reargument which can be found in exhibit 2.

275. John James and his facilitators who are Judges in the Kings County Supreme Court are directly responsible for plaintiff's financial injuries, and for the destruction to plaintiff's credit worthiness which has caused the financial destruction of plaintiff and his family.

276. The September 1, 2021 orders of the Second Department are attempts to block public exposure of the criminal conspiracy, protect the Clerk who is married to a sitting Judge, Court employees and Judges of the Kings County Supreme Court who are intimately involved in the conspiracy, and that's why both the Police and the Kings County District attorney have refused to respond to plaintiff's demands to investigate the criminal conspiracy.

277. On February 24, 2022 at 2.52 p.m. plaintiff entered the motion support office in the Kings County Supreme Court and attempted to file a motion in the case of CitiMortgage v Weaver.

278. The Clerk threw the motion at plaintiff and it fell on the counter which shows that the Kings County Supreme Court has now flagged plaintiff in its computer system as a trouble maker.

279. This further shows that there is a coordinated and concerted attempt by defendants and their co-conspirators to block public exposure of the criminal conspiracy with meet the standard for Racketeering.

280. Further, defendants' conduct to deny plaintiff of his due process rights is obstruction of Justice, and the subjecting of plaintiff and his family to conditions of life that are intended to cause the physical destruction of plaintiff and his family which meets the definition of Genocide.

281. At all times herein mentioned, defendants, and each of them, hereinabove, were the agents, employees, partners, aiders and abettors, co-conspirators, and/or joint ventures of each of the other defendants named herein and were at times operating and acting within the purpose and scope of said agency, service, employment, partnership, Enterprise, conspiracy, and/or joint

venture, and each defendant has ratified and approved the acts of each of the remaining

defendants. Each of the defendants aided and abetted, encouraged, and rendered substantial

assistance to the other defendants in breaching their obligations to plaintiff, as alleged herein. In

taking action to aid and abet and substantially assist the commission of these wrongful acts and

other wrongdoings complained of, as alleged herein, each of the defendants acted with an

awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would

substantially assist the accomplishment of the wrongful conduct, wrongful goals, and

wrongdoing.

282. "Maloney first argues that the Chow case was improperly included as part of the RICO

conspiracy because it involved some participants, specifically Cooley and Marcy, who did not

participate in the other predicate acts. This ignores the nature of § 1962 (d). This section of

RICO is capable of providing for the linkage in one proceeding of a number of otherwise distinct

crimes and/or conspiracies through the concept of Enterprise conspiracy." United States v.

Neapolitan, 791 F.2d 489, 501 (7th Cir.), cert. denied, 479 U.S. 940, 107 S. Ct. 422, 93 L.Ed.2d

372 (1986); see United States v. Gonzalez, 921 F.2d 1530, 1540 (11th Cir.)

283. "The notion of Enterprise conspiracy has made much of the old distinction between single

conspiracy and multiple conspiracy irrelevant to RICO conspiracy charges.). cert. denied, 502

U.S. 827, 112 S. Ct. 96, 116 L.Ed.2d 68 and cert. denied, 502 U.S. 860, 112 S. Ct. 178, 116 L.

Ed 2d 140 (1991).

284. "To prove a single RICO conspiracy, the Government need only show that the defendant

agreed to conduct the affairs of the Enterprise through the Commission of two predicate acts.

United States v. Ashman, 979 F.2d 469, 485 (7th Cir. 1992), cert. denied, 510 U.S. 814, 114 S.

Ct. 62, 126 L.Ed.2d 32 (1993).

285. "Thus, a series of agreements that under pre-RICO law would constitute multiple conspiracies could under RICO be tried as a single Enterprise conspiracy if the defendants have agreed to commit a substantive RICO offense." Neapolitan, 791 F.2d at 496 n.3, (quoting United States v. Riccobene, 709 F.2d 214, 224-25 (3d Cir.), cert. denied, 464 U.S.849, 104 S. Ct. 157, 78 L.Ed.2d 145 (1983).

286. "So long as the alleged RICO co-conspirators have agreed to participate in the affairs of the same Enterprise, the mere fact that they do not conspire directly with each other does not convert the agreement to conduct the Enterprise's affairs through a pattern of Racketeering activity into multiple conspiracies." United States v. Friedman, 854 F.2d 535, 562 (2d Cir. 1988), cert. denied, 490 U.S. 1004, 1098 S. Ct. 1637, 104 L. Ed 153 (1989); Accord United States v. Lee Stoller Enter., Inc., 652 F.2d 1313, 1319 (7th Cir. 1981), cert. denied, 454 U.S. 1082, 102 S. Ct. 636, 70 L. Ed 2d 615 (1982); United States v. Hughes, 895 F.2d 1135, 1140 (6th Cir. 1990).

287. "The Government has certainly succeeded in establishing that Maloney agreed to conduct the affairs of the Circuit Court through several predicate acts, even though each predicate act did not involve the exact same participants. Furthermore, the facts of the instant case support the existence of a single RICO conspiracy. The common element in each predicate act was the involvement of Judge Maloney in his capacity as a Judicial officer in the Circuit Court of Cook County and a desire of all participants to effect a corruption of that Office." United States v. Hampton, 786 F.2d 977, 981 (10th Cir. 1986).

288. "Moreover, Swano's willingness to pass information about a Federal Investigation along to Cooley and his desire to discuss his problems in the Hawkins case with Cooley indicates the kind of common goals and mutual benefit between the lawyers seeking to obtain the bribes which

supports the inference of a single RICO conspiracy." See United States v. Stephens, 46 F.3d 587, 593 (7th Cir. 1995).

289. In order to make plaintiff whole, the Court must examine all of the actions of the defendants alleged herein in context, address the continuing violation of plaintiff's rights, and the conspiracy to block public exposure of the criminal conspiracy by ordering the defendants to pay plaintiff at least ($ 5,000, 000.00) Five million dollars in compensation for his injuries.

290. "Finally, Maloney argues that the evidence of the uncharged Rosario bribe, ostensibly offered to prove his connection to the Enterprise and the conspiracy, was unnecessary for that purpose and was therefore mere propensity evidence. Maloney suggests that it was unnecessary to establish that he was a Circuit Court Judge because his status was not in dispute. During the Rosario case, however, Swano arranged a meeting with Judge Maloney to confirm that Robinson was his Bagman and that he was indeed willing to fix cases. The evidence was not only offered to bolster Maloney's connection to the Circuit Court, but it was offered to establish his connection to the conspiracy to accept bribes. It was clearly admissible for this purpose. See Neapolitan, 791 F.2d at 506. For the above reasons, Maloney's conviction, and the District Court's decision to deny his motion for a new trial, are affirmed." United States v. Maloney, 71 F.3d 645 (7th Cir. 1995).

## FIRST CAUSE OF ACTION

### Genocide (Title 18 U.S.C. § 1091 (a) (4)

**291.** Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 290 above, as fully set forth herein.

292. The persecution of plaintiff and his family was widely known to the defendants who acted in concert, and further acted as facilitators to the criminal conspiracy without accountability.

293. Moreover, the kind of harm resulting from the beating of plaintiff which knocked out two of plaintiff's upper front teeth, the false statements made to the Police which caused plaintiff to be wrongfully arrested, failure of the Police to offer plaintiff medical attention for his injuries, fees in excess of $10,000.00 to pay for plaintiff's attorney and private investigator, the Dentist fees to replace the two upper front teeth that were knocked out by the assailants, the cost of the eye Doctor to whom plaintiff was referred by his General Practitioner for damage to plaintiff's eyes, the continued foreclosure of the subject property which has ruined plaintiff's creditworthiness and denied plaintiff of access to credit, insurance and employment, the fact that the assailants continue to live rent free from September 1, 2008 to present in all three apartments of the subject property but were never arrested and or prosecuted, the refusal of the New York City Police Department and the Kings County District attorney to investigate the criminal conspiracy because the Kings County Clerk, certain employees of the Kings County Supreme Court, and certain Judges of the Kings County Supreme Court are intimately involved in the conspiracy, the fact that Alexandra Corsi, her employer, and the Police Department acted in concert with the witness Sophia Maloney by making false statements to the Courts of Southern District which induced the Court to dismiss plaintiff's complaint against the Police Department, the deprivation of plaintiff's due process rights, the conspiracy by John James, Judge Vaughan, his Court attorney Joy Campanelli, his Part Clerk Peter, and his Court officer Dawn to file motions without notice to plaintiff, and the fact that orders were entered against plaintiff by Judge Vaughan which will allow the assailants to live rent free in the subject property until Jesus comes again for the second time, and the conspiracy to block plaintiff from providing evidence of the conspiracy

which was affirmed by the Second Department on September 1, 2021, was intended to subject plaintiff and his family to conditions of life intended to cause the physical destruction of plaintiff and his family which meets the definition of Genocide.

294. The defendants' acts and omissions were a proximate cause of the persecution of plaintiff and his family which resulted in injury to plaintiff and his family.

295. Plaintiff was subjected to conditions of life that were intended to cause the physical destruction of plaintiff and his family which have resulted in injuries to plaintiff and his family.

296. Plaintiff and his family are entitled to actual damages caused by defendants' negligence.

297. Plaintiff and his family are entitled to punitive damages caused by the failures of Police Officer Azizur Rahman because the New York City Police Department is responsible for the wrongdoing of New York City Police officers under the doctrine of respondeat superior.

298. Plaintiff and his family are also entitled to punitive damages caused by the failures of Court employees and Judges of the Kings County Supreme Court because the New York State Unified Court System, and the New York State Office of Court Administration are responsible for the wrongdoing of Judges, and Court employees under the doctrine of respondeat superior.

## SECOND CAUSE OF ACTION

**Hostile Court Environment based on National origin in Violation of title VII of the Civil Rights Act of 1964**

299.  Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 298 above, as fully set forth herein.

300. Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate against someone on the basis of race, color, national origin, sex, or religion.

301. Defendants' subjected plaintiff to unwelcome conduct by forcing him, as term and condition of access to the Courts, to participate in and enforce their policy of treating plaintiff to a different standard set for attorneys, and pro se Whites.

302. This conduct was severe and pervasive as described in the exhibits attached.

303. Plaintiff's multiple complaints to the New York City Police Department, Kings County District attorney, Administrative Judge of the Kings County Supreme Court, Office of Court Administration, State agencies, and the New York State attorney General did not cause defendants to rescind the policy.

304. The policy and defendants' actions in relation thereto created a hostile Court environment for plaintiff because of his national origin, a male of African descent.

305. Plaintiff found the environment of the Kings County Supreme Court to be hostile and heavily charged with National origin discrimination.

306. Management level employees of the Kings County Supreme Court knew, or should have known of the policy conduct in relation thereto.

307. Defendants did not exercise reasonable care to prevent the creation of a hostile Court environment charged with National origin discrimination, and did not exercise reasonable care to rescind the policy, even after plaintiff's repeated opposition to it.

308. As a direct, legal and proximate result of this discrimination, plaintiff has sustained economic and emotional injuries, resulting in an amount to be proven at trial.

309. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to plaintiff's right to be free from discrimination based on National origin.

## THIRD CAUSE OF CTION

**National origin discrimination (Disparate treatment) in violation of Title VII of the Civil Rights Act of 1964**

310. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1, through 309, above.

311. Plaintiff is a Male of African descent, and a litigant in the Kings County Supreme Court.

312. Defendants discriminated against plaintiff because the Police wrongfully arrest plaintiff, failed to read plaintiff his Miranda rights, refused to offer plaintiff medical attention for his injuries, and also failed to investigate, arrest and prosecute the assailants who beat up plaintiff on September 21, 2008.

313. Defendants discriminated against plaintiff because Judges Kurtz, Hinds-Radix, and Vaughan entered numerous orders which have allowed the assailants to live rent free in the subject property until Jesus comes again for the second time based upon Fake evidence which deprived plaintiff of his rent.

314. Defendants discriminated against plaintiff by engaging in a conspiracy to victimize plaintiff for filing a complaint against Judge Vaughan's attorney Monica Connell. **See exhibits Y, Z, & AA** of the affidavit in support of motion for reargument which can be found in exhibit 2.

315. When plaintiff demanded to see Judge Vaughan, his Court attorney Joy Campanelli called two male officers to assist a female officer named Dawn, then told plaintiff that if he didn't leave the Courtroom, he will be arrested which is not only discrimination, but obstruction of Justice.

316. Defendants discriminated against plaintiff by entertaining motions filed by John James without notice to plaintiff, but when plaintiff complained about abuse of the legal process, Judge Vaughan's Part Clerk Peter instructed Court officer Dawn to take care of plaintiff.

317. Dawn then invited plaintiff outside the Courtroom to discuss the matter.

318. Once plaintiff got outside the Courtroom, Dawn ran back inside the Courtroom and locked the door, and a decision was made without plaintiff being present. **See exhibit X** of the affidavit in support of motion for reargument which can be found in exhibit 2.

319. Defendants discriminated against plaintiff when John James and Judge Vaughan engaged in a conspiracy whereby James filed an order to show cause on October 23, 2015 seeking to join 212 First Holding Corp to the Better Homes case without notice to plaintiff, but Better Homes dissolved on June 29, 2016, and three months later on October 6, 2016 Judge Vaughan entered an order joining 212 First Holding Corp to the Better Homes case, with intent to allow the assailants to continue to live rent free in the subject property which deprived plaintiff of his due process rights, and resulted in the theft of plaintiff's rent. **See exhibits OOO, PPP & QQQ** of the affidavit in support of motion for reargument which can be found in exhibit 2.

320. Defendants discriminated against plaintiff when plaintiff filed a motion to disqualify John James in the Better Homes case, James failed to oppose the motion, but Judge Cohen denied plaintiff's unopposed motion with intent to protect John James from a default. **See exhibit UUU** of the affidavit in support of motion for reargument which can be found in exhibit 2.

321. Defendants discriminated against plaintiff when Judge Sweeney entered an order denying plaintiff's motion for referral to the Kings County District attorney for an investigation, then entered an order barring plaintiff from filing any future pleadings without prior approval of the Court with intent to block public exposure of the criminal conspiracy which was affirmed by the Second Department on November 1, 2021.

322. Plaintiff's National origin was the determining factor and/or a motivating factor in defendants' adverse actions.

323. As a direct, legal and proximate result of the discrimination, plaintiff has sustained economic and emotional injuries, resulting in an amount to be proven at trial.

324. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to plaintiff's right to be free from discrimination based on National origin.

## FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1983 (DEPRIVATION OF RIGHTS)

325. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 324, above.

326. By their conduct, the Police arrested plaintiff based upon the statement of a false witness, the Police failed to read plaintiff his Miranda rights, the Police failed to offer plaintiff medical attention for his injuries as a victim of a crime, the Police failed to investigate the matter even after plaintiff submitted evidence of perjury by the witness, the Police then engaged in a conspiracy with the witness Sophia Maloney to submit a false affidavit to the Manhattan Federal Court which was used to induce the Court to dismiss plaintiff's complaint against the Police

Department. **See exhibit 1, and exhibits R, S, T, L, U & V** of the affidavit in support of motion for reargument which can be found in exhibit 2.

327. By her conduct, Nancy Sunshine, Clerk of Kings County refused to investigate the Fake lis pendens submitted to Judge Kurtz by John James which induced an order staying all evictions on all floors of the subject property after plaintiff filed a nullity of verified document with the Clerk.

328. John James told Judge Vaughan's Court attorney Joy Campanelli in Court, that he has an arrangement with Nancy Sunshine whereby from time to time he borrow the stamp. **See exhibits M & W** of the affidavit in support of motion for reargument which can be found in exhibit 2.

329. By their conduct, Judge Donald Kurtz, and his successors Sylvia Hinds-Radix, Jack M. Battaglia, David B. Vaughan, and Devin P. Cohen as described herein, acted under color of State Law to deprive plaintiff of his due process rights in the case of Better Homes Depot v Whyte et al; by entering orders to block public exposure of the Kings County criminal conspiracy to steal plaintiff's rents for all three apartments located at 489 Classon Avenue in Brooklyn from September 1, 2008 to present in violation of the Fourteenth amendment. **See exhibits M, N, O, X, AA, BB, OOO, PPP, QQQ, UUU & VVV** of the affidavit in support of motion for reargument which can be found in exhibit 2.

330. By their conduct, Judge Lara J. Genovesi and her successor Peter P. Sweeney, as described herein, acted under color of State Law to deprive plaintiff of his due process rights in the case of CitiMortgage v Weaver et al; by entering orders with intent to block public exposure of the criminal conspiracy by prohibiting plaintiff from providing evidence which fails to comport to the orders of the conspirators without prior approval of the Court in violation of plaintiff's due process rights under the Fourteenth amendment. **See exhibits DD, UU, WW, XX, ZZ, AAA,**

**BBB, CCC, FFF, GGG, HHH, III & JJJ** of affidavit in support of motion for reargument which can be found in exhibit 2.

331. Because Court employees and Judges of the Kings County Supreme Court take their directives from the New York State Unified Court System, and the New York State Office of Court Administration, defendants Unified Court System and Office of Court Administration are responsible for the wrongdoing of Judges, and Court employees under the doctrine of respondeat superior.

332. Thus, defendants are liable for violations of 42 U.S.C. § 1983 which prohibits the deprivation of rights under color of State Law secured under the United States Constitution.

333. By their conduct, as described herein, and acting under color of State Law to deprive plaintiff of his due process rights, Judge Vaughn's Part Clerk Peter instructed Court officer Dawn to assist plaintiff, Dawn then invited plaintiff outside of the Courtroom to discuss the matter but once plaintiff got outside the Courtroom, Dawn ran back inside the Courtroom and locked the door, and a decision was made without plaintiff being present.

334. By their conduct, as described herein, and acting under color of State Law to deprive plaintiff of his due process rights, the conspiracy between John James and Judge Vaughan whereby James filed an order to show cause to join 212 First Holding Corp to the Better Homes case without notice to plaintiff, and Judge Vaughan entered an order joining 212 First Holding Corp., to the Better Homes case three months after Better Homes Depot Inc., dissolved and ceased to exist violates plaintiff's due process rights under the Fourteenth Amendment which demonstrate that defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation of rights under color of State Law secured under the United States Constitution.

335. By their conduct, as described herein, acting under color of State Law, defendants are liable to plaintiff under 42 U.S.C. § 1983 for the violation, of plaintiff Constitutional right to be free from discrimination, threats, and malicious prosecution under the Fourteenth Amendment to the United States Constitution.

336. Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive plaintiff of his Constitutional rights.

337. Defendants then entered orders prohibiting plaintiff from providing evidence which fails to comport to the Fake documents and false representations presented to the Court by John James in the Better Homes case, and the Fake documents and false representations presented to the Court in the CitiMortgage case by the law firm of Berkman, Henoch, Peterson & Peddy, P.C., the law firm of Sweeney, Gallo, Reich & Bolz LLP, the law firm of Akerman LLP, and the law firm of David A. Gallo & associates LLP.

338. By their conduct, as described herein, acting under color of State Law, defendants are liable under 42 U.S.C. § 1983 for engaging in a conspiracy to deprive plaintiff of his due process rights.

339. By their conduct, as described herein, defendants are liable to plaintiff under 42 U.S.C. § 1983 for violations under color of State Law, of the Constitutional right to be free from any deprivation of rights without due process of law under the Fourteenth Amendment to the United States Constitution.

340. As a direct and proximate result of defendants' unlawful actions, plaintiff has suffered, and will continue to suffer damages, including mental, and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## FIFTH CAUSE OF ACTION

**Discrimination on the Basis of Race in violation of the New York State Human Rights Law (Executive Law § 290 et seq.)**

341. Plaintiff reasserts and alleges the allegations set forth in paragraphs 1 through 340, as though fully set forth herein.

342. New York City Police Officer Azizur Rahman arrested plaintiff based upon the statement of a false witness, failed to read plaintiff his Miranda rights, failed to offer medical attention to a victim who just got his two upper front teeth knocked out and his eyes swollen, charged plaintiff with resisting arrest, failed to investigate the false statements made by the witness who alleged that she was beaten by plaintiff, engaged in a conspiracy with the witness to submit a false affidavit to the Courts of the Southern District executed by the witness, then made false representations to the Courts of the Southern District which induced the Court to dismiss plaintiff's complaint against the Police Department.

343. As a litigant in the Kings County Supreme Court, defendants are responsible for making and enforcing an effective policy in order to protect all users of the Court from a Hostile Court environment, and from retaliation for complaining about discrimination for treating plaintiff, a pro se male of African descent, differently from attorneys and pro se Whites.

344. On information and belief, defendants have established a policy that purports to prevent discrimination of Blacks and other minorities.

345. As set forth in detail herein, defendants failed to enforce said anti-discriminatory policies from 2008 to present. **See exhibit 2.**

346. Plaintiff filed numerous complaints for discrimination and further requested an investigation into the Kings County Criminal conspiracy to steal plaintiff's rent for all three apartments located at 489 Classon Avenue in Brooklyn which was used in part to finance political campaign for Judgeship of certain Judicial candidates. **See exhibit 2.**

**347.** As set forth herein, defendants instructed employees of the Kings County Supreme Court to order plaintiff to leave the Courtroom when plaintiff demanded to see Judge Vaughan, then called two additional male officers to assist a female officer name Dawn, and threatened plaintiff with arrest if he refused to leave the Courtroom.

348. As set forth herein, defendants instructed Court officer Dawn, an employee of the Kings County Supreme Court to invite plaintiff outside the Courtroom to discuss the matter after plaintiff complained about corrupt practices in Judge Vaughan's Courtroom.

349. Once plaintiff got outside the Courtroom, Dawn ran back inside the Courtroom and locked the door, and an order was entered without plaintiff being present, and defendants are well aware of the conspiracy because plaintiff filed a complaint with the office of the Administrative Judge on the very same day. **See exhibit X** of the affidavit in support of motion for reargument which can be found in exhibit 2.

350. On information and belief, defendants' actions of herein were taken pursuant to a policy designed to protect Judges from discipline, or any other adverse action in response to the Judge's violation of law prohibiting discrimination based upon race.

351. Defendants New York State Unified Court System, and New York State Office of Court Administration were charged with the responsibility to act to prevent discrimination and harassment in the Kings County Supreme Court, but failed and or refused to take any action to

prevent Judges Kurtz, Hinds-Radix, Battaglia, Vaughan, and Cohen in the Better Homes case, and Judges Genovesi and Sweeney in the CitiMortgage foreclosure action from discriminating against plaintiff, and to further retaliate against plaintiff for exposing public corruption.

352. Defendants' actions violated the New York Human Rights Law.

353. As a result of defendants' illegal actions, plaintiff has suffered economic loss, loss of plaintiff's rent for all three apartments located at 489 Classon Avenue in Brooklyn New York from September 1, 2008 to present, destruction of plaintiff's creditworthiness, denial of access to credit, denial of access to employment, denial of access to insurance, loss of enjoyment of life, damage to plaintiff's reputation, and emotional distress.

**WHEREFORE**, plaintiff respectfully requests this Court enter judgment:

a. Holding that defendants' subjected plaintiff and his family to conditions of life that were intended to cause the physical destruction of plaintiff and his family which meet the standard for Genocide pursuant to title 18 U.S.C. § 1091 (a) (4).

b. Holding that defendants have violated plaintiff's rights under the Civil Rights Act of 1964, the New York Human Rights Law, and 42 U.S.C. § 1983 (Deprivation of rights).

c. Holding that defendants have engaged in the continuing violation of plaintiff's rights from 2008 to the present as alleged herein.

d. Declaring that defendants are liable for their negligent conduct.

e. Declare that the Kings County Supreme Court is a Racketeering Enterprise.

f. Award plaintiff compensatory and punitive damages for personal injury, pain and suffering, emotional distress, destruction of plaintiff's credit worthiness, denial of

access to employment because of bad credit as a result of the foreclosure action caused by Judges employed by the Kings County Supreme Court, denial of access to credit, denial of access to insurance, and loss of income as a result of denial of access to employment in the amount of at least ($5, 000,000.00) Five Million Dollars.

g.  Award plaintiff reasonable litigation expenses and attorney fees if plaintiff decides to retain counsel to prosecute this action.

h.  Award plaintiff post-judgment interest, to the extent allowable by law.

i.  Order the New York City Police Department to investigate the false statements made to the Police by Sophia Maloney which caused the Police to wrongfully arrest plaintiff.

j.  Order the New York City Police Department to prosecute Sophia Maloney if it is determined that she intentionally made false statements to the Police which caused officer Azizur Rahman to wrongfully arrest plaintiff

k.  Order the New York City Police Department to instruct the Kings County District attorney to motion the Kings County criminal Court to vacate and expunge plaintiff's criminal record based upon the wrongful arrest by Officer Azizur Rahman.

l.  Order the New York City Police Department to investigate the wrongful arrest of plaintiff.

m.  Order the New York City Police Department to arrest and prosecute the assailants who beat up plaintiff and knocked two of plaintiff's upper front teeth on September 21, 2008.

n.  Order the Kings County Clerk Nancy Sunshine to determine whether the font on the lis pendens attached to John James order to show cause for stay of evictions comport to the font for the stamps used by the Kings County Clerk.

o.  Order the Kings County Clerk Nancy Sunshine to determine whether the lis pendens attached to John James order to show cause which induced Judge Kurtz to sign an order on January 28, 2009 staying all evictions, was a valid instrument filed with the Clerk.

p.  Order the office of Court Administration, and the Unified Court System to investigate misconduct in the Kings County Supreme Court as described in the complaint.

q.  Enjoining defendants from engaging in further discrimination, and to immediately halt their repressive strategy to silence plaintiff with intent to put plaintiff's cases into the sewer system.

r.  Enjoining defendants from harassment based on race, and retaliation against plaintiff.

s.  Order the Kings County Supreme Court to lift the stay of all evictions, on all floors of 489 Classon Avenue in Brooklyn New York which has been in effect since January 28, 2009 without any further delay.

t.  Refer the matter to the New York State Commission on Judicial conduct for an investigation of the Judges involved in the Kings County criminal conspiracy to deprive plaintiff of his due process rights.

u.  Refer the matter to the Kings County District attorney for an investigation into the conspiracy by John James and the assailants to steal plaintiff's rents for all three apartments located at 489 Classon Avenue in Brooklyn New York from September 1, 2008 to present.

v.  Providing such other relief as the Court deems just and proper.


**Plaintiff demands a trial by Jury on all matters triable by Jury.**

Dated: May 26, 2022

Respectfully Submitted

Everette Weaver

Plaintiff

827 Route 82

Hopewell Junction, NY 12533

914-490-1855

egw226@yahoo.com