**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

EVERETTE WEAVER,

                                        Plaintiff,

v.                                                                    22-cv-559 (BKS/DJS)

NEW YORK STATE OFFICE OF COURT
ADMINISTRATION, NEW YORK STATE UNIFIED
COURT SYSTEM, KINGS COUNTY SUPREME
COURT, NANCY T. SUNSHINE, and NEW YORK CITY
POLICE DEPARTMENT,

                                        Defendants.

_____

**Appearances:**

*Plaintiff pro se:*
Everette Weaver
Hopewell Junction, New York 12533

*For Defendants New York State Office of Court Administration, New York State Unified Court System, Kings County Supreme Court, and Nancy T. Sunshine:*
Letitia James
Attorney General of the State of New York
Shannan C. Krasnokutski
Assistant Attorney General, of Counsel
The Capitol
Albany, New York 12224

*For Defendant New York City Police Department:*
Hon. Sylvia O. Hinds-Radix
Corporation Counsel of the City of New York
Omar J. Siddiqi
Assistant Corporation Counsel, Senior Counsel
New York City Law Department
100 Church Street, 3rd Floor
New York, New York 10007

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Everette Weaver brings this action against five defendants: (1) New York State Office of Court Administration ("OCA"); (2) New York State Unified Court System ("UCS"); (3) Kings County Supreme Court;[1] (4) Nancy T. Sunshine; and (5) New York City Police Department ("NYPD"). (Dkt. No. 1, ¶¶ 19–23.) When construed liberally, Plaintiff's pro se complaint asserts claims under (1) the Genocide Convention Implementation Act of 1987; (2) Title VII of the Civil Rights Act of 1964; (3) 42 U.S.C. § 1983; (4) the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (5) New York State Human Rights Law. (*Id.* ¶¶ 279–353.) Plaintiff seeks compensatory damages, punitive damages, declaratory judgment, and injunctive relief. (*Id.* at 57–59.) Presently before the Court are Defendants OCA, UCS, Kings County Supreme Court, and Sunshine's ("Court Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 16), and Defendant NYPD's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 21). Plaintiff opposes each motion. (Dkt. Nos. 20, 24.) Court Defendants and Defendant NYPD filed replies in further support of their motions. (Dkt. Nos. 22, 27.) Also before the Court is Plaintiff's motion for a preliminary injunction, (Dkt. No. 29), which Court Defendants oppose, (Dkt. No. 31).[2] For the

---

[1] Defendant Kings County Supreme Court notes that it is improperly sued as such and would be properly sued as New York State Supreme Court, Kings County. (Dkt. No. 16-1, at 7.) The Court refers to the New York State Supreme Court, Kings County as Kings County Supreme Court for the purposes of these motions in accord with Plaintiff's nomenclature.

[2] Plaintiff refers to this motion as a motion to compel and for sanctions. (Dkt. No. 29, at 1, 3.) Plaintiff seeks "an order . . . to stay the public sale of [P]laintiff's property." (*Id.* at 1.) Court Defendants interpret Plaintiff's motion as seeking "injunctive relief to stay a public foreclosure sale of real property in Brooklyn, New York." (Dkt. No. 31, at 1.) In reply, Plaintiff discusses the legal standard for imposing an injunction pursuant to Federal Rule of Civil Procedure 65. (Dkt. No. 32, at 2.) Thus, the Court construes Plaintiff's motion as a motion for a preliminary injunction pursuant to Rule 65.

following reasons, the Court grants both motions to dismiss and denies Plaintiff's motion for a preliminary injunction as moot.

## II.    FACTS[3]

### A.    September 21, 2008, Arrest

Plaintiff alleges that on August 28, 2008, he purchased a three-family, four-story house located at 489 Classon Avenue, Brooklyn, New York. (Dkt. No. 1, ¶¶ 25, 30.) On September 21, 2008, Plaintiff went to the property to install a "for sale" sign and was "beaten up and got his two front teeth knocked out" at the property by three people. (*Id.* ¶¶ 26, 31, 33.) After investigation by the police, Plaintiff was arrested by NYPD Officer Azizur Rahman and spent twenty-five hours in the Kings County jail. (*Id.* ¶¶ 26, 35, 44.) Plaintiff sued non-party[4] Azizur Rahman for "wrongful arrest, failure to read [P]laintiff his Miranda rights, and for failing to offer medical attention to a victim." (*Id.* ¶ 44.) Subsequently, Plaintiff made complaints to various non-party employees of Defendant NYPD to seek the arrest of several non-party individuals involved in the September 21, 2008, altercation. (*Id.* ¶¶ 47–49.) The non-party individuals who accosted Plaintiff live at the property "rent free" and rent out an apartment in the building. (*Id.* ¶¶ 27, 74.)

### B.    Ownership Dispute

After purchasing the property located at 489 Classon Avenue, Plaintiff retained attorneys to initiate eviction proceedings against those living at the property. (*Id.* ¶ 70.) Justice Kurtz of the Kings County Supreme Court stayed all evictions upon the tenants' attorney's filing of an order to show cause demonstrating the existence of a lis pendens against the property. (*Id.* ¶¶ 70–72,

---

[3] These facts are drawn from the complaint, (Dkt. No. 1), and represent the Court's best attempt at discerning what Plaintiff has alleged in his voluminous and repetitive filings. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] The Court's use of the term "non-party" is in reference to the parties to the instant proceeding, not the parties to the various proceedings about which Plaintiff complains.

86.) This attorney, Plaintiff alleges, fabricated the lis pendens by "manufactur[ing] his own stamp" to emulate the stamp used by Defendant Sunshine, the County Clerk, Clerk of the Supreme Court, and Commissioner of Jurors of Kings County, (Dkt. No. 1, ¶ 22), on court filings and "backdate[d] a lis pendens" to "alleg[e] that there was a lis pendens on the property when [P]laintiff purchased [it]." (*Id.* ¶¶ 72, 79–80, 85.) Plaintiff also alleges that Defendant Sunshine "has an arrangement" with the attorney "whereby from time to time [the attorney] borrow[s] the stamp." (*Id.* ¶ 83.) The matter was seemingly transferred to Justice Hinds-Radix,[5] who extended the stay of evictions pending resolution of the ownership dispute. (Dkt. No. 1, ¶ 69.) The matter was apparently transferred again to Justice Battaglia, and the stay of evictions was again extended. (*Id.* ¶ 115.) The matter was transferred yet again—this time to Justice Vaughan, (*id.* ¶ 89)—and in 2010, Plaintiff informed Kings County Supreme Court personnel of his allegations against the tenants' attorney. (*Id.* ¶¶ 80–82, 89–91.) Plaintiff alleges that, during a proceeding, non-party employees of the Kings County Supreme Court forced Plaintiff to leave the courtroom. (*Id.* ¶¶ 92–94.) Plaintiff also alleges that he never received a ruling from the court, and Defendant Sunshine informed him that "the motion was marked off, the decision was oral, and no appeal can be taken from an oral decision." (*Id.* ¶ 97.)

Plaintiff next alleges that in October 2015, the tenants' attorney filed a motion in the proceeding but did not provide notice to Plaintiff. (*Id.* ¶ 98.) Though Justice Vaughan "was not in the [c]ourtroom," non-party personnel of the Kings County Supreme Court "instructed attorneys to settle their cases." (*Id.* ¶ 101.) A different non-party employee of the Kings County Supreme Court then locked Plaintiff out of the courtroom. (*Id.* ¶ 103.) Plaintiff alleges that he

---

[5] Non-party Sylvia Hinds-Radix is now the Corporation Counsel of the City of New York. (Dkt. No. 21, at 1; Dkt. No. 21-1, at 11.)

spoke with another individual who had similarly been locked out of the courtroom. (*Id.* ¶¶ 105–06.)

Plaintiff filed a complaint about the incident with the office of the Administrative Judge and alleges that the incident was part of "a pattern of conduct commonly used in the Kings County Supreme Court upon pro se male litigants of African descent who question the corrupt practices of the Kings County Supreme Court." (*Id.* ¶¶ 104, 107.) Plaintiff also initiated an Article 78 proceeding against Justice Vaughan, alleging that proceedings before Justice Vaughan were affected by a conspiracy involving non-party personnel of the Kings County Supreme Court and the tenants' attorney. (*Id.* ¶¶ 108–12.) This conspiracy also resulted, Plaintiff alleges, in Justice Vaughan taking various positions against Plaintiff, (*id.* ¶¶ 113–14), though at least some of Justice Vaughan's orders appear to have been issued before Plaintiff filed his complaint and initiated his Article 78 proceeding, (*id.*).

In 2020, Plaintiff, then proceeding before Justice Cohen, filed a motion to disqualify the tenants' attorney. (*Id.* ¶¶ 120, 126.) Plaintiff tried to explain to Justice Cohen various flaws in Justice Vaughan's prior rulings and how other orders in cases involving Plaintiff affected the proceedings. (*Id.* ¶¶ 127–33.) Plaintiff subsequently initiated an Article 78 proceeding against Justice Cohen. (*Id.* ¶ 140.) "[T]he Second Department entered a decision & judgment denying the Petition." (*Id.* ¶ 141.) On September 1, 2021, "the Second Department affirmed the trial Court's order[,] which bars [P]laintiff from filing any further pleadings with[out] prior permission of the Court." (*Id.* ¶ 273.) Upon Plaintiff's attempt to file a motion on February 24, 2022, Defendant Sunshine "threw the motion at [P]laintiff and it fell on the counter." (*Id.* ¶ 277.)

### C.    Foreclosure Proceedings

Plaintiff alleges that in 2009, non-parties initiated a foreclosure proceeding involving the property at 489 Classon Avenue against Plaintiff and a "co-borrower . . . who is now deceased."

(*Id.* ¶¶ 28, 148.) Plaintiff lists numerous actions taken and statements made by non-parties during that proceeding. (*Id.* ¶¶ 150–82.) Plaintiff alleges that he did not become aware of the foreclosure proceeding until 2014. (*Id.* ¶ 183.) Plaintiff answered the foreclosure complaint but was held in default for filing an untimely answer. (*Id.* ¶¶ 185, 256–58.)

On June 17, 2015, Plaintiff was sued by a separate non-party for "an order to sell the subject property." (*Id.* ¶ 198.) Ultimately, that party appears to have been added as a party to the original foreclosure proceeding, (*id.* ¶¶ 203–44), but the suit it initiated was dismissed, (*id.* ¶ 263).

## III. STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

"A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). *See Morales v. New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014) (citation

omitted); *see also Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 359 (N.D.N.Y. 2017).

Similarly, a motion to dismiss based on the *Rooker-Feldman* doctrine is considered a motion to

dismiss pursuant to Rule 12(b)(1), *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d

263, 273 (S.D.N.Y. 2018), as is a motion to dismiss based on an abstention doctrine, *City of New

York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, including

a motion invoking res judicata, *Mann*, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018,

at *8, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its

face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide

factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting

*Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint

and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d

247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d

Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special

solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738

F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

"Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

**IV.     ANALYSIS**

**A.     Eleventh Amendment Immunity[6]**

Court Defendants argue that they are entitled to immunity under the Eleventh Amendment. (Dkt. No. 16-1, at 15–17.) Plaintiff argues that "one or all of the three exceptions to [] Eleventh Amendment" immunity applies. (Dkt. No. 20, at 44.)

The Eleventh Amendment provides that "[t]he judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suits against a state unless Congress has (1) abrogated the state's sovereign immunity, (2) the state has consented to suit, or (3) a plaintiff is "seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." *N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 124–25 (N.D.N.Y. 2012) (citing *Ex Parte Young*, 209 U.S. 123, 154 (1908)). It is well-established that Congress did not abrogate states' immunity when it enacted § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343–45 (1979), and that New York State has not waived immunity from suit on the § 1983 claims Plaintiff asserts, *see, e.g.*, *LoPorto v. Cnty. of Rensselaer*, No. 15-cv-866, 2018 WL 4565768, at *6, 2018 U.S. Dist. LEXIS 162432, at *14 (N.D.N.Y. Sept. 24, 2018); *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39–40 (2d Cir. 1977). Nor has Congress abrogated or New York waived immunity from suits arising from certain state-law claims, including New York Human Rights Law. *See Soloviev v.*

---

[6] Although all Defendants moved to dismiss only under Rule 12(b)(6), (Dkt. No. 16, at 2; Dkt. No. 21, at 1), because "subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte," *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000), the Court will consider Court Defendants' Eleventh Amendment, *Rooker-Feldman*, and *Younger* abstention arguments under the applicable Rule 12(b)(1) standard.

*Goldstein*, 104 F. Supp. 3d 232, 244 (E.D.N.Y. 2015); *see also Purdie v. City Univ. of N.Y.*, No. 13-cv-6423, 2015 WL 129552, at *4, 2015 U.S. Dist. LEXIS 2458, at *11–12 (S.D.N.Y. Jan. 8, 2015) ("[Congress has not abrogated sovereign immunity] with respect to state-law actions that are brought to federal court through supplemental jurisdiction. New York has not consented to suit under the State or City Human Rights Law." (citation omitted)); *Canales-Jacobs v. N.Y. Off. of Ct. Admin.*, 640 F. Supp. 2d 482, 499 (S.D.N.Y. 2009) ("The Eleventh Amendment bars suits, regardless of the relief sought, alleging violations of state law against the State of New York, its agencies and agents, unless the state has consented to being sued in a federal forum. This bars plaintiff's claims under the NYSHRL and the NYCHRL from being heard in this court." (citation omitted)). Thus, the Eleventh Amendment bars suits arising under § 1983 or New York Human Rights Law against New York, New York agencies, and New York officials sued in their official capacities except to the extent that a suit seeks injunctive relief for an ongoing violation of the law or the Constitution. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 447 (S.D.N.Y. 2011).

"[T]he New York State Unified Court System is unquestionably an 'arm of the State' and is entitled to Eleventh Amendment sovereign immunity," as are the constituent courts of the Unified Court System. *Gollomp v. Spitzer*, 568 F.3d 355, 366–68 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)); *see also Kampfer v. Cnty. of Fulton*, Nos. 94-9110, 94-9201, 1997 WL 48990, at *1–2, 1997 U.S. App. LEXIS 653, at *3 (2d Cir. Jan. 15, 1997) (summary order) ("The County Court of the State of New York is an integral part of the State's Unified Court System and as such is an arm of the State of New York." (citation omitted)). The New York State Office of Court Administration, which is the "administrative arm of the New York State Unified Court System," is also entitled

to Eleventh Amendment immunity. *Canales-Jacobs*, 640 F. Supp. 2d at 498. So too are county clerks and clerks of state courts in the context of managing court filings and collecting filing fees. *See Diaz v. Pataki*, 368 F. Supp. 2d 265, 271 (S.D.N.Y. 2005), *aff'd sub nom. Diaz v. Paterson*, 547 F.3d 88 (2d Cir. 2008).[7]

Here, Plaintiff's § 1983 and New York Human Rights Law claims against Court Defendants are construed as claims against New York. Plaintiff specifically requests injunctive relief from Defendant Sunshine. (Dkt. No.1, at 58–59.) But Plaintiff has not sufficiently alleged any ongoing violation of the law or the Constitution that would allow him to circumvent the prohibitions of the Eleventh Amendment under *Ex Parte Young*. Nor has Plaintiff alleged an ongoing violation of the law or the Constitution for which any other Court Defendant could provide relief. Thus, Plaintiff's § 1983 and New York Human Rights Law claims against Court Defendants are barred by the Eleventh Amendment. Accordingly, Plaintiff's § 1983 and New York Human Rights Law claims against Court Defendants are dismissed.

## B.    *Rooker-Feldman* Doctrine

Court Defendants argue that, "[t]o the extent Plaintiff's claims are aimed at challenging orders issued by a State court, all such claims are subject to dismissal based upon the *Rooker-Feldman* doctrine." (Dkt. No. 16-1, at 11–12.) Plaintiff argues that his claims "fall[] into the fraud exception to the [*Rooker-Feldman* doctrine]." (Dkt. No. 20, at 16.)

The *Rooker-Feldman* doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic*

---

[7] Plaintiff is suing Defendant Sunshine in her official capacity. (Dkt. No. 1, ¶ 22.)

*Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422

F.3d 77, 84 (2d Cir. 2005). There are four "requirements" that must be satisfied before *Rooker-*

*Feldman* applies: (1) the "federal-court plaintiff must have lost in state court," (2) the plaintiff

"must complain of injuries caused by a state-court judgment," (3) the plaintiff "must invite

district court review and rejection of that judgment," and (4) the state-court judgment "must have

been rendered before the district court proceedings commenced." *Green*, 585 F.3d at 101 (citing

*Hoblock*, 422 F.3d at 85) (internal quotation marks and brackets omitted). The underlying

principle of the *Rooker-Feldman* doctrine is that, "within the federal judicial system, only the

Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85. Where allegations of

fraud invite "the federal court to review the state proceedings and determine that the . . .

judgment was issued in error," a claim is barred to the extent that the relief sought "voids" the

state judgment. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014).

But a claim seeking damages for injuries resulting from such alleged fraud that "does not require

the federal court to sit in review of the state court judgment" is not barred by the *Rooker-*

*Feldman* doctrine. *See id.* at 427–28.

Here, Plaintiff seeks, at least in part, "review and rejection" of judgments of a state court.

(Dkt. No. 1, at 58–59 (requesting an order that Defendant Kings County Supreme Court "lift the

stay of all evictions[] on all floors of 489 Classon Avenue in Brooklyn[,] New York[,] which has

been in effect since January 28, 2009[,] without any further delay").) Thus, to the extent Plaintiff

requests that this Court review and reject state-court judgments entered against Plaintiff before

the filing of the instant case that Plaintiff alleges have caused him injury, such requests are

barred by the *Rooker-Feldman* doctrine and any related claims are dismissed. Plaintiff's

conclusory allegations of "fraud" are insufficient to avoid dismissal under the *Rooker-Feldman*

doctrine. *See Borukhov v. Vartolo*, No. 19-cv-3395, 2020 WL 5424595, at *3, 2020 U.S. Dist.

LEXIS 165913, at *7–8 (E.D.N.Y. Sept. 10, 2020) ("[A]llegations that a mortgage foreclosure

violated a plaintiff's constitutional rights, or that a foreclosure judgment was procured by fraud,

will not suffice to provide a court with jurisdiction under the *Rooker-Feldman* doctrine in actions

where any injuries the plaintiff allegedly suffered in this case arose from the state court

foreclosure judgment and to remedy those injuries, the Court would be required to review that

judgment or to readjudicate aspects of the state court judgment." (quoting *Sorgente v. Wells*

*Fargo Bank, N.A.*, No. 18-cv-7100, 2020 WL 2837021, at *2, 2020 U.S. Dist. LEXIS 95154, at

*6–7 (E.D.N.Y. May 28, 2020))); *Whitfield v. McCabe, Weisberg & Conway, P.C.*, No. 18-cv-

7259, 2019 WL 332179, at *3, 2019 U.S. Dist. LEXIS 12476, at *7 (E.D.N.Y. Jan. 25, 2019)

("[T]he *Rooker-Feldman* doctrine applies to [complaints] seeking to overturn . . .

holdover/eviction judgments issued by . . . state courts.").[8]

## C.   *Younger* Abstention

Court Defendants argue that, to the extent Plaintiff seeks injunctive relief with respect to

ongoing state-court proceedings, the *Younger*[9] abstention doctrine bars such relief. (Dkt. No. 16-

1, at 11 n.2; Dkt. No. 22, at 5–6.) Plaintiff argues that the state-court proceedings were brought

in bad faith and used to harass Plaintiff or that the state lacks an adequate forum to adjudicate his

claims, thereby rendering *Younger* inapplicable. (Dkt. No. 20, at 22–24.)

The *Younger* doctrine creates "narrow" circumstances under which federal courts'

abstention from their "virtually unflagging" obligation "to hear cases within their jurisdiction" is

---

[8] While the Court notes that compensatory and punitive damages related to injuries arising from Defendants' alleged conduct are not barred by the *Rooker-Feldman* doctrine, *see Vossbrinck*, 773 F.3d at 427–28, Plaintiff has failed to allege a viable federal cause of action for such damages. To the extent Plaintiff alleges these injuries arose from Defendants' violations of § 1983 or New York Human Rights Law, these claims against Court Defendants are barred by the Eleventh Amendment and are therefore dismissed as against those Defendants.

[9] *See Younger v. Harris*, 401 U.S. 37 (1971).

appropriate. *Cavanaugh v. Geballe*, 28 F.4th 428, 430, 432 (2d Cir. 2022) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The *Younger* abstention doctrine provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The doctrine applies in only three "exceptional circumstances" involving: (1) ongoing state criminal prosecutions, (2) certain "civil enforcement proceedings," and (3) "pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citations and internal punctuation omitted). Where one of *Sprint*'s categories is implicated, *Younger* abstention is required. *See Cavanaugh*, 28 F.4th at 433. Before invoking *Younger*, a federal court may also "appropriately consider three additional factors laid out" in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), which, when present, "further counsel in favor of abstention." *Id.* at 432 (quoting *Sprint*, 571 U.S. at 81) (brackets omitted). These non-dispositive *Middlesex* factors are whether there is (1) an "ongoing state judicial proceeding" that (2) "implicates important state interests" and (3) "provides an adequate opportunity to raise federal challenges." *Id.* (quoting *Sprint*, 571 U.S. at 81).

"[A] state foreclosure action is a 'civil proceeding that implicates a State's interest in enforcing the orders and judgments of its courts . . . .'" *Santana v. Fed. Nat'l Mortg. Ass'n*, No. 15-cv-1424, 2016 WL 676443, at *2, 2016 U.S. Dist. LEXIS 19382, at *4 (N.D.N.Y. Feb. 18, 2016) (quoting *Abbatiello v. Wells Fargo Bank, N.A.*, No. 15-cv-4210, 2015 WL 5884797, at *4, 2015 U.S. Dist. LEXIS 137742, at *9 (E.D.N.Y. Oct. 8, 2015)). Other proceedings that similarly "concern the disposition of real property . . . implicate important state interests." *Ochei v. Lapes*,

13

No. 19-cv-3700, 2020 WL 528705, at *4, 2020 U.S. Dist. LEXIS 17322, at *10–11 (S.D.N.Y.

Jan. 31, 2020) (quoting *Clark v. Bloomberg*, No. 10-cv-1263, 2010 WL 1438803, at *2, 2010

U.S. Dist. LEXIS 35802, at *7 (E.D.N.Y. Apr. 12, 2010)). Thus, courts in the Second Circuit

have found that *Younger* abstention is appropriate when a plaintiff, through a federal action,

seeks to enjoin ongoing real property proceedings. *See id.*; *see also Santana*, 2016 WL 676443,

at *2, 2016 U.S. Dist. LEXIS 19382, at *4 (collecting cases).

But even where *Younger* would otherwise apply, a federal court may still exercise its

jurisdiction "upon a showing of 'bad faith, harassment or any other unusual circumstance that

would call for equitable relief.'" *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198

(2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54). A federal plaintiff seeking to "head off

*Younger* abstention" bears the burden of establishing that an exception applies. *Id.* (citing

*Kirschner v. Klemons*, 225 F.3d 227, 235–36 (2d Cir. 2000)); *see also Spargo*, 351 F.3d at 77

(noting that the "Supreme Court placed the burden of establishing the inadequacy of state

proceedings squarely on the party seeking to avoid abstention").

Here, neither Plaintiff nor Defendants make clear whether state-court proceedings are, in

fact, ongoing. But to the extent that state-court real property proceedings are ongoing, the

*Younger* abstention doctrine applies and bars the Court from enjoining any such proceeding. And

although Plaintiff argues that an exception to *Younger* abstention applies, Plaintiff's conclusory

assertions are insufficient to meet the necessary burden. *See Diamond*, 282 F.3d at 198.

Accordingly, with regard to requests to enjoin any ongoing state-court property proceedings,

*Younger* abstention is warranted.

### D.    Res Judicata

Defendant NYPD argues that claims against it must be dismissed under the doctrine of

res judicata because Plaintiff filed a complaint in the Southern District of New York "raising

allegations stemming from the same 2008 arrest he raises here," and that action was dismissed pursuant to Federal Rule of Civil Procedure 12(c).[10] Plaintiff argues that "[r]es judicata does not insulate the State when it acts like a Gangster against harmless Citizens" and that (1) the issues in the previous litigation and the current litigation are not identical; (2) the issues in the previous litigation were not decided on the merits because of the existence of misrepresentations, fraud, and a conspiracy during the prior litigation; and (3) the identities of the parties in the previous litigation and the current litigation are not the same. (Dkt. No. 24, at 15–23.)

"Under the doctrine of res judicata, or claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action.'" *Cayuga Nation v. Tanner*, 448 F. Supp. 3d 217, 233 (N.D.N.Y. 2020) (quoting *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999)), *aff'd*, 6 F.4th 361 (2d Cir. 2021). An "order of dismissal . . . 'bars later litigation if [the] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies . . . (4) involving the same cause of action.'" *Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)). "Res judicata acts as a bar 'not only as to what was pleaded, but also as to what could have been pleaded.'" *Magi XXI, Inc. v. Stato Della Cita Del Vaticano*, 22 F. Supp. 3d 195, 201 (E.D.N.Y. 2014) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985)). This analysis requires looking "to whether the underlying facts are

---

[10] The relevant decision is *Weaver v. City of N.Y.*, No. 09-cv-10262, 2011 WL 4974570, 2011 U.S. Dist. LEXIS 121322 (S.D.N.Y. Oct. 18, 2011). "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). The Court takes judicial notice of the Southern District's decision "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Id.* (quoting *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). That is because "[r]es judicata operates to preclude claims, rather than particular configurations of parties; [a plaintiff's] addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously dismissed claims." *Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 418 (E.D.N.Y. 2010) (quoting *Cameron v. Church*, 253 F. Supp.2d 611, 623 (S.D.N.Y. 2003)), *aff'd*, 438 F. App'x 31 (2d Cir. 2011).

Here, the parties do not dispute that the Southern District was a court of competent jurisdiction. Nor do they meaningfully dispute that the previous litigation ended with a final judgment on the merits. Plaintiff asserts that "the issue was not decided on the merit because the complaining witness and the Police engaged in a conspiracy" and "because the memorandum and order entered on October 18, 2011[,] by Judge Castel was induced by practicing misrepresentation and fraud on the Court." (Dkt. No. 24, at 16.) In support of that position, Plaintiff cites *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), which stands for the proposition that res judicata does not bar "claims which did not even . . . exist" at the time of the previous action "and which could not possibly have been sued upon in the previous case" because such claims are new, separate causes of action. *See id.* at 328. But Plaintiff's allegations of misrepresentations, fraud, and the existence of a conspiracy arising after the previous action are entirely conclusory; that is, Plaintiff has failed to allege any new, separate causes of action that would not be barred by res judicata.

Plaintiff further argues that the issues in the prior and current proceedings are not identical. But the only allegations against Defendant NYPD involve Plaintiff's arrest on

16

September 21, 2008, and an alleged conspiracy arising from that arrest. (Dkt. No. 1, ¶¶ 26–27, 30–59, 293, 297, 312, 326, 342.) This is the same "nucleus of operative fact" as was at issue in the previous litigation. *See Weaver*, 2011 WL 4974570, at \*1–2, 2011 U.S. Dist. LEXIS 121322, at \*2-6. In fact, "[t]he overlapping material factual allegations [at issue] make it 'clear that the factual predicate of the claims asserted in this Court are not just "substantially" identical to those that were asserted before the [prior court], they are in fact entirely identical.'" *See Magi XXI*, 22 F. Supp. 3d at 204 (quoting *Overview Books*, 755 F. Supp. 2d at 419). Thus, all claims raised now "could have been pleaded" in the prior action. *See id.* at 201 (quoting *Teltronics*, 762 F.2d at 193). Indeed, both Defendant NYPD and non-party City of New York were defendants in the Southern District case giving rise to Defendant NYPD's res judicata defense. *See Weaver*, 2011 WL 4974570, 2011 U.S. Dist. LEXIS 121322. And finally, though Plaintiff argues that the identities of the parties in the previous litigation and the current litigation are not the same, (Dkt. No. 24, at 15–23), the "addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle [Plaintiff] to revive the previously dismissed claims." *See Overview Books*, 755 F. Supp. 2d at 418. Accordingly, Plaintiff's claims against Defendant NYPD are dismissed.[11]

---

[11] Defendant NYPD also argues that it is not a suable entity. (Dkt. No. 21-1, at 7.) The Court agrees. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Plaintiff states that he "intends to amend his complaint to add the City of New York as a defendant to this case, for the reasons stated in the complaint." (Dkt. No. 24, at 8.) However, Plaintiff's claims, as alleged against Defendant NYPD, would be barred on the same grounds if alleged against the City of New York. Plaintiff is not granted leave to amend the complaint to add the City of New York as a defendant because amendment would be futile. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("[L]eave to amend a complaint may be denied when amendment would be futile." (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006))).

E.      **Failure to State a Claim**

1.      **Genocide**

Plaintiff asserts a claim under the Genocide Convention Implementation Act of 1987, 18

U.S.C. § 1091(1)(4). (Dkt. No. 1, ¶¶ 291–98.) Court Defendants argue that the statute on which

Plaintiff premises his genocide claim does not support a civil cause of action and that, even if a

cause of action existed, Plaintiff cannot plausibly allege such a claim. (Dkt. No. 16-1, at 12–13.)

In response, Plaintiff merely states that "[t]he facts and evidence demonstrate[] that the State

defendants aided and abetted the Genocide of plaintiff Weaver and his family." (Dkt. No. 20, at

25.)

The Genocide Convention Implementation Act of 1987, 18 U.S.C. §§ 1091–93,

establishes criminal laws that do not "creat[e] any substantive or procedural right enforceable by

law by any party in any proceeding." *See Kadic v. Karadzic*, 70 F.3d 232, 242, 242 & n.6 (2d

Cir. 1995) (quoting 18 U.S.C. § 1092) (noting that § 1091 itself "creates no *new* federal cause of

action in civil proceedings" (quoting H.R. Rep. 566, 100th Cong., 2d Sess., at 8 (1988)). But

even if there existed a private cause of action for genocide under § 1091, Plaintiff plainly fails to

allege that any Defendant subjected "a national, ethnic, racial, or religious group" to "conditions

of life that are intended to cause the physical destruction of the group in whole or in part." 18

U.S.C. § 1091. Accordingly, Plaintiff's claim under 18 U.S.C. § 1091 is dismissed.

2.      **Title VII**

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964. (Dkt. No. 1,

¶¶ 299–324.) Court Defendants argue that Plaintiff has failed to state a claim under Title VII

because Title VII "prohibits discrimination only by employers, employment agencies[,] and

unions." (Dkt. No. 16-1, at 17–18.) Plaintiff does not meaningfully dispute that Title VII requires

18

an employment relationship but maintains that he has plausibly alleged claims under Title VII. (Dkt. No. 20, at 50–54.)

Title VII regulates "employer practices," employment agency practices", and "labor organization practices." 42 U.S.C. § 2000e-2. In the absence of allegations of an employment relationship, claims under Title VII must be dismissed. *See Miles v. N.Y. Presbyterian Hosp.*, No. 22-cv-3161, 2022 WL 1556869, at *2, 2022 U.S. Dist. LEXIS 87908, at *5 (S.D.N.Y. May 16, 2022). Here, Plaintiff has not alleged that he has an employment relationship with any Defendant. Accordingly, Plaintiff's claims under Title VII are dismissed.

### 3.     RICO

Construing the complaint liberally, Plaintiff asserts a claim under the Racketeer Influenced and Corrupt Organizations Act. (Dkt. No. 1, ¶¶ 279, 281–90; Dkt. No. 20, at 25–43.) Court Defendants argue that, "[a]lthough it is unclear precisely what 'racketeering' activity Plaintiff purports to allege against the Court Defendants, it is clear that any such allegations fail to state a colorable claim." (Dkt. No. 16-1, at 13.) In response, Plaintiff recites "facts and evidence" that "demonstrate that the Kings County criminal conspiracy has met [the] standard of a Racketeering Enterprise." (Dkt. No. 20, at 25–43.) The "facts and evidence" put forth by Plaintiff consist primarily of alleged actions of non-parties spanning from 2009 to 2022. (*Id.*)

"To sustain a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). Section 1961(1) provides a list of predicate "acts" that can constitute a pattern of "racketeering activity." *Id.* (defining

"racketeering activity" as including, among others, murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and dealing in a controlled substance or listed chemical). But "allegations of frivolous, fraudulent, or baseless litigation activities— without more—cannot constitute a RICO predicate act." *Weaver v. Boriskin*, 751 F. App'x 96, 98 (2d Cir. 2018) (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)).

Here, even assuming Plaintiff could allege sufficient facts to show that Defendants constituted an "enterprise," he has failed to allege a pattern of acts that could give rise to a RICO claim because he has not alleged that any Defendant committed any predicate act that could constitute racketeering activity. *See id.* Accordingly, Plaintiff's RICO claim is dismissed.

## F.    Remaining State-Law Claims

Having dismissed all of Plaintiff's federal causes of action and New York State Human Rights Law claim, the Court now considers whether it should exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367. Construing the complaint liberally, Plaintiff has brought various claims involving the New York doctrine of respondeat superior. (Dkt. No. 1, ¶¶ 3, 8, 297–98, 331.)[12] Plaintiff does not and, based on the complaint, cannot assert diversity jurisdiction. (*Id.* at 4.) Therefore, the Court has no independent jurisdiction over the state law claims. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553-54 (2005). Accordingly, the Court could have only supplemental jurisdiction over them. *See* 28 U.S.C. § 1367. "The exercise of supplemental jurisdiction is within the sound discretion of the district court." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013). The

---

[12] As previously discussed, Congress has not abrogated and New York has not waived immunity from suits arising from state-law claims. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 244 (E.D.N.Y. 2015). Thus, any state-law claims against Court Defendants would also be dismissed on sovereign immunity grounds. To the extent Plaintiff's respondeat superior claims could be construed as *Monell* claims under § 1983, those claims are dismissed as against Court Defendants on sovereign immunity grounds and Defendant NYPD on res judicata grounds, as analyzed above.

Court must consider judicial economy, convenience, and other factors, but generally, "where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014); *see also* 28 U.S.C. § 1367(c)(3). Here, having dismissed the federal claims and the New York Human Rights Law claim at the pleadings stage, the Court finds that the balance of factors counsels in favor of dismissing the state-law claims. Therefore, to the extent that the complaint can be construed as raising state-law claims that are not barred by the Eleventh Amendment, those claims are dismissed.

### G.     Preliminary Injunction

Plaintiff also requests a preliminary injunction. (Dkt. No. 29.) Having dismissed all of Plaintiff's claims, Plaintiff's motion for a preliminary injunction is denied as moot. *See Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 403 (N.D.N.Y. 2020).

## V.     LEAVE TO AMEND

The Federal Rules of Civil Procedure provide that "leave to amend 'shall be freely given when justice so requires.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)). For pro se plaintiffs, a "complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). However, "leave to amend may be denied if . . . amendment would be futile." *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker*, 470 F.3d at 491). "Amendment is futile if it fails 'to cure prior deficiencies.'" *Id.* (quoting *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Here, most of Plaintiff's claims are barred on jurisdictional or res judicata grounds for which amendment would be futile. To the extent Plaintiff's claims are not barred on those

grounds, amendment is nevertheless "unlikely to be productive" because of significant substantive defects. *See Trombley v. O'Neill*, 929 F. Supp. 2d 81, 106 (N.D.N.Y. 2013). Leave to amend is therefore futile. *See id.* Accordingly, Plaintiff is denied leave to amend.

## VI.    PRE-FILING INJUNCTION

Court Defendants request an injunction preventing Plaintiff from filing anything further in the Northern District absent leave to file. (Dkt. No. 16-1, at 19–21.) Plaintiff replied in opposition. (Dkt. No. 20, at 56–65.) The Court addresses this request in a separate pre-filing order. (Case No. 23-pf-1, Dkt. No. 1.)

## VII.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants New York State Office of Court Administration, New York State Unified Court System, Kings County Supreme Court, and Nancy T. Sunshine's motion to dismiss, (Dkt. No. 16), is **GRANTED**; and it is further

**ORDERED** that Defendant New York City Police Department's motion to dismiss, (Dkt. No. 21), is **GRANTED**; and it is further

**ORDERED** that all claims raised in Plaintiff Everette Weaver's complaint, (Dkt. No. 1), are **DISMISSED**; and it is further

**ORDERED** that Plaintiff's motion for a preliminary injunction, (Dkt. No. 29), is **DENIED as moot**; and it is further

**CERTIFIED** pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum-Decision and Order would not be taken in good faith.

**IT IS SO ORDERED.**

Dated: <u>March 14, 2023</u>
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

22